## COMMONWEALTH *vs.* DANIEL SMITH.

Suffolk.    March 24. — June 24, 1880.    AMES & LORD, JJ., absent.

On an indictment under the Gen. Sts. *c.* 161, § 38, for embezzlement, the fact that the defendant, an agent employed to sell goods and authorized to receive payment therefor, is paid in part by commissions on such sales, is immaterial.

If an agent, authorized to receive payment for goods sold by him on account of his employer, receives a check payable to his own order, the property in the check does not vest in him, and, if he fraudulently converts the check or its proceeds, he may be found guilty of embezzlement, under the Gen. Sts. *c.* 161, § 38, although, by the course of business between him and his employer, he was in the habit of depositing such checks to his credit in a bank, and sending his own checks in lieu thereof.

It is no defence to an indictment for the larceny of intoxicating liquors, or to an indictment for embezzling the proceeds of the sales of such liquors, that the liquors were kept for sale, or sold in this Commonwealth, in violation of law.

At the trial of an indictment for embezzlement, there was evidence that the defendant, an agent, was authorized to receive payment for goods sold by him and was entitled to receive commissions on such sales; that he received a check, deposited it to his credit, and sent his own check for the amount to his employer, which was not paid. *Held*, that the check sent by him was admissible in evidence; and that evidence was also admissible to show that his commissions were always paid by his employer, and that he was not authorized to deduct them from the proceeds of sales.

INDICTMENT containing seventeen counts, some for larceny, and some, under the Gen. Sts. *c.* 161, § 38, for embezzlement. At the trial in the Superior Court, before *Pitman*, J., a verdict of not guilty was returned on the fifth count, and a *nolle prosequi* was entered as to all the other counts except those hereinafter stated, on which the defendant was found guilty; and a bill of exceptions, in substance as follows, was allowed:

The second count charged the embezzlement of twelve hundred and thirty-one dollars. The fourth count, the larceny of four hundred and twenty gallons of distilled spirits, and of four hundred and twenty gallons of whiskey. The seventh count,

the embezzlement of seven hundred and sixty dollars. The tenth count, the embezzlement of eight hundred and sixteen dollars. The twelfth count, the embezzlement of nine hundred and sixty-five dollars. The fifteenth count, the embezzlement of eleven hundred and fifty-nine dollars. The counts for embezzlement alleged the money taken to be the property of Rachel S. Gaff and Oliver Perrin, copartners; and the count for larceny alleged the goods taken to be the property of Oliver Perrin.

The defendant had been employed by the firm of J. W. Gaff & Company, of Cincinnati, Ohio, distillers of whiskeys, under a written contract, dated October 10, 1876, by the terms of which he was "to sell our whiskeys and distilled spirits in the New England States;" and to "receive in lieu of salary" certain specified commissions. "All goods to be priced to the said D. Smith at our lowest net cash price; and for any advance that the said D. Smith may be able to obtain from any customers in the said New England States, over and above our net cash prices, the said D. Smith shall receive fifty per cent of any such advance, in addition to the commissions already named above; the said Daniel Smith shall devote his entire time and attention to the sale of our goods, visiting such cities and towns in New England as said Daniel Smith or ourselves shall deem expedient for the proper sale of our goods, and as often as the necessities of the trade demand it; the said Daniel Smith, in consideration of above commissions, shall pay his own travelling and incidental expenses, and shall receive no other salary or pay for his services than the commissions above named; the said D. Smith shall report all sales as fast as they are made directly to us, and no sales shall be considered binding until approved by us; upon all time sales he shall get three cents advance upon our net cash price for sixty days' time, for thirty days one cent, and for ninety days four cents; also, in consideration of above commissions, he shall guarantee say fifteen per cent of all sales made by him or to his territory; the said Daniel Smith shall put a limit upon what credit each and every customer in said New England States shall be entitled to, and that we shall at no time exceed said limit except upon our own risk, or upon consultation with him."

Thomas T. Gaff, a witness for the government, testified that he was manager of the business of the firm of J. W. Gaff & Company, of which firm Oliver Perrin was a partner; that the defendant was paid his commissions directly from the firm; that he would draw on them and they would accept his draft, and that this was the only way in which he was paid; that he received no commission for making collections, had no authority to use such collections for himself, was not permitted to deduct a commission for sales out of a collection, and had never done so; that for some time the defendant had made various collections for the firm, and it had been their practice to receive them and ratify them; that they found no fault with this course of business, but only with his not paying over; that in all these collections the defendant never sent bank-bills by express, but forwarded a check of the amount of the collection, payable to their order, and signed either by himself or the creditor from whom the collection was made.

As to the second count, there was evidence that the defendant, on July 25, 1879, at Springfield, Massachusetts, collected by a check to his order, which he indorsed and got cashed at a Springfield bank, $1231.23, from Eugene Lynch, in payment for a bill of goods, sold by him on behalf of the firm, and five days afterward wrote a letter from Boston, remitting his own check, on the Columbian National Bank of Boston, payable to the order of J. W. Gaff & Co., for the same amount, and that this check was never paid. The government put this check in evidence, against the objection of the defendant, who also objected to the evidence of the way in which he was paid his commission. It appeared, further, that the firm, by its letters, had instructed the defendant to make a settlement of this bill and collect the same.

As to the seventh count, there was evidence that Joseph Doherty, by a note due April 8, 1879, had settled his bill of goods sold on behalf of the firm by the defendant at Boston, which note the firm had put into a bank for collection, and the same remained unpaid; that on May 30, 1879, they forwarded the note to the defendant, with instructions to collect it, and wrote several letters between that date and July 23, 1879, calling upon the defendant to return the note and make a report thereon,

to which no answers were ever given; that Doherty, on April 25, 1879, paid the defendant, in bank-bills, silver, and, possibly, a small check, the amount of said note, taking a receipt therefor, signed by the defendant as agent of said firm; and that this payment was never remitted to said firm.

As to the tenth count, there was evidence that the defendant, on July 9, 1879, was paid by Austin Cannon, in bank-bills, the sum alleged in that count, for goods sold on behalf of said firm, by the defendant, at Boston; and that this sum was never paid over to the firm.

As to the twelfth and fifteenth counts, there was evidence that John J. McCormick and Daniel Shea, in July 1879, severally paid to the defendant, by their checks to his order, the several amounts in those counts, in settlement for bills of goods sold to them, on behalf of said firm, by the defendant, at Boston, and took receipts therefor, signed " D. Smith, for J. W. Gaff & Co. ; " and that these collections were never received by the said firm.

Upon the tenth, twelfth, and fifteenth counts no special order had been given to the defendant to collect.

The government introduced evidence, that about July 30, 1879, the defendant left Boston, abstracting from his safe his journal, ledger, and a book kept in accordance with rules of the United States Internal Revenue, wherein all sales of liquors and the serial numbers of the barrels were required to be entered; that afterwards he was traced to Leadville, Colorado, where he was living under the name of Williams, and was arrested; that he subsequently admitted that he had destroyed his books, had lost ten or twelve thousand dollars in gambling, was sorry for what he had done, and, if he should be imprisoned for five years, would do all in his power to make restitution to the firm.

The defendant put in checks upon the First National Bank and Columbian National Bank, both of Boston, for various sums, amounting in all to more than $16,000, having numerous dates, between October 1878, and June 1879, signed by the defendant, and payable to the order of J. W. Gaff & Co.; and showed that neither the defendant nor said firm, during the time covered by the indictment, had any license to sell liquors in Boston, where the defendant had his office.

The defendant asked the judge to rule, that, if the defendant received from a customer, in payment for a bill for Gaff & Co.'s goods, a check payable to the defendant's own order, he could not be convicted of embezzling the money of Gaff & Co. But the judge declined so to rule,. and instructed the jury that there was no variance between money and a check; and if the defendant received a check for a bill of said goods, although payable to his own order, he could be convicted on the charge of embezzling the money of Gaff & Co., if the other elements constituting embezzlement were proved.

The defendant also requested the judge to give the following, among other instructions, as to embezzlement:

"1. If by the terms of an agent's employment he is bound to pay over to his principals the proceeds of sales specifically, and in the same shape as was received, and transmit to them the same identical bank-bills, coin, or checks received by him, without authority to mix the same with his own funds, a fraudulent conversion of them would be embezzlement. But if, from the terms of his employment, or the understanding between him and his employers, or the previous usage and course of business between them, or the nature of the business itself, or otherwise, Smith had authority to mix the proceeds of the sales and collections made by him with his own funds, his use of them, and not paying over the amount so received by him, would not be embezzlement. 2. The kind of agent meant in the statute against embezzlement is an agent employed in a lawful business; and if the business in which Smith was employed by Gaff & Co. was to sell their whiskey and liquors here, and neither of them had a license to sell the same here pursuant to our law, the business was an unlawful business, and Smith would not be liable to indictment as an agent of Gaff & Co., within the meaning of the statute, for the embezzlement of their property, which came to his hands as their agent here, and was entrusted to him in the course of transacting and carrying on such unlawful business."

The judge gave the last part of the first request, commencing with the words, "But if," in the language requested, but omitted the words, "and in the same shape as was received, and transmit to them the same identical bank-bills, coin, or checks received by him," in the first part of the first request, and instead

thereof instructed the jury that, if it was the defendant's duty to pay over the specific fund received by him, it would not be affected by a mere change in the form of the fund for convenience; that is, if the defendant received gold in payment, he could change it to bills or a check. If the fund retained its identity, so long as it retained its identity it was Gaff & Co.'s; and a fraudulent conversion of the fund would be embezzlement. But if he was not bound to pay over the specific amount received by him, but had authority to mix it with his own, and account at some future time, then it would not be embezzlement; and that any variance between money and a check was cured by the Gen. Sts. c. 161, § 42.

The judge declined to give the second instruction asked for, and instructed the jury on this point, that, even if the business was unlawful, the defendant might be convicted of larceny and embezzlement; that the law was violated whether the business was lawful or unlawful; and, without ruling whether the sales were made in Boston or in Cincinnati, instructed the jury that the question of the lawfulness or unlawfulness of the business was immaterial in a criminal case of this kind. Other and full instructions upon the law of larceny and embezzlement upon points not embraced in defendant's requests were given, and not excepted to. The defendant alleged exceptions.

*I. W. Richardson & J. S. English*, for the defendant.

*G. Marston*, Attorney General, *& F. H. Gillett*, Assistant Attorney General, for the Commonwealth.

COLT, J. The defendant was employed by Gaff & Co., distillers, to sell their goods in the New England States, under a written contract by which he became their agent, and was to receive commissions and a part of the profits, in lieu of salary, as compensation for his services. By the contract, he had no right of property in the goods, or the money received for them. The relation between him and his employers was such, that a felonious conversion to his own use of the money collected from sales on their account would constitute the crime of embezzlement. He was an agent, authorized to receive money on account of his employers, and it is immaterial that his services were paid for, in whole or in part, by commissions or profits on such sales. Under the English statute against embezzlement by

clerks or servants, it is held, in several cases, that the allowance of a portion of the profits on goods sold will not destroy the relation of master and servant. *Rex* v. *Hartley*, Russ. & Ry. 139. *Rex* v. *Hoggins*, Russ. & Ry. 145. *Rex* v. *Carr*, Russ. & Ry. 198. 2 Arch. Crim. Pl. (8th ed.) 450.

In the case at bar, the jury, under the instructions given, must have found a fraudulent conversion of money, which the defendant was bound by the terms of his employment to pay over to his principals, as the specific proceeds of sales made by him, and that he had no authority, either by the terms of the contract, or the usage, nature, and course of the business, to mingle the same with his own funds. This is sufficient to support the verdict, even if the defendant, without destroying the identity of the fund belonging to his employers, had in fact changed its form from checks to bank-bills.

The instructions requested by the defendant upon this point could properly be given only as modified by the judge. The fact that the defendant received for the goods of his employers a check payable to his own order, did not vest in him the title to the check, or its avails. The relation of debtor and creditor did not exist, and the specific proceeds of the sales, whether in cash or in checks payable to their agent's order, belonged to his employers, and were held in trust for them, so long as the fund was capable of identification. *Commonwealth* v. *Tuckerman*, 10 Gray, 173, 196. The transaction is the same whether the defendant received the price of the goods sold in bank-bills from the hand of the purchaser, or in a check, upon which he received the money or a credit at the bank. Under the statute, proof of the embezzlement of a bank check is sufficient to sustain an indictment for the embezzlement of money. Gen. Sts. c. 161, § 42.

. The evidence which tended to show, from the course of business, that the defendant was permitted to deposit all money collected to his own credit, and remit by his own check payable to the order of his employer, was for the consideration of the jury. But the jury found that the defendant had no authority to mingle the money of his employers with his own money, and so become thereby a debtor for the amount belonging to them.

By the second request for instructions, the judge was asked to rule, in substance, that the defendant would not be liable for the embezzlement of the proceeds of liquor, sold by him as agent for the owners, in violation of the license laws of this Commonwealth. This instruction was properly refused. The fact that no action upon an express contract, or for money had and received, would lie to recover money received by such agent, does not show that one who steals or embezzles ·it is not liable to criminal prosecution. The law refuses its aid to a party seeking to enforce an illegal contract. The right by suit at law to collect debts contracted in an illegal traffic may be forfeited. But money received in ouch traffic is still property, which the law protects against wrongdoers. There is nothing in the statutes in relation to the sale of intoxicating liquors to prevent the owner from maintaining an action to recover such property or its value, when tortiously taken from his possession, or the possession of his agent. *Booraem* v. *Crane*, 103 Mass. 522. He may forfeit or lose his property in such goods, when upon proper legal process it appears that they were procured for an illegal purpose, but only upon such proof, and in the methods pointed out by the law. Until then he has a property in them, and in the proceeds of them, which may be the subject of larceny or embezzlement. *Commonwealth* v. *Coffee*, 9 Gray, 139. The possession of the alleged owner is sufficient title against a stranger or a thief. The violation of the license law is dealt with by itself, and subjected to such punishment as is provided therefor, and a theft or embezzlement of property, illegally acquired by another, is treated by itself, and punished as such. *Commonwealth* v. *Rourke*, 10 Cush. 397.

The case of *Regina* v. *Hunt*, 8 Car. & P. 642, as we understand it, is not in conflict with this. It is briefly reported, but it appears that the money charged to have been embezzled was taken by the servant of a society which, under an existing statute, was an unlawful association.

The objection was taken, that property could not be laid in the indictment as belonging to persons so illegally combined together, and it was held to be well taken, on the ground, as we are left to infer, that a combination of individuals wholly illegal, could not have legal title in money, which was acquired,

and could be used, only for the illegal purposes of the associa-tion.

The evidence produced by the government to show that the commissions to which the defendant was entitled were paid by his employers, and not left to be deducted from money in his hands, and the defendant's check which was sent to Gaff & Co. to pay the full amount of the debt collected by him, and which was offered for the same purpose, do not appear to have been improperly admitted. The whole evidence is not reported, and it does not appear in what connection this evidence was used. It was at least competent, as tending to show the existence of criminal intent on the part of the defendant.

*Exceptions overruled.*