## COMMONWEALTH *vs.* J. LOWELL MOORE.

Suffolk.    March 30, 1896. — September 4, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Agency — Embezzlement by Treasurer of Investment Company.*

If the jury are warranted in finding that a note and mortgage guaranteed by a company organized to negotiate loans secured by mortgages were received by it from the owner thereof, with the knowledge of its treasurer, under a special agency to collect them and to pay over the proceeds to the owner, and that the treasurer, instead of paying over the money to the owner, deposited the check received therefor to the credit of the company, with the intent thereby to appropriate it to the company's uses, he may be convicted of embezzlement.

INDICTMENT, in three counts, for the embezzlement of money, on August 30, 1894, the property of Edmund H. Bennett, collected for him by the Globe Investment Company, of which the defendant was the treasurer and manager. The case was submitted to the Superior Court, and, after a verdict of guilty, to this court, on appeal, upon agreed facts, the nature of which appears in the opinion.

The case was argued at the bar in March, 1896, and afterwards was submitted on the briefs to all the judges.

*R. Stone*, for the defendant.

*M. J. Sughrue*, First Assistant District Attorney, for the Commonwealth.

MORTON, J. We assume, from the manner in which the case was tried, that the agreed facts were subject to any inferences which the jury properly might have drawn, and that such infer-

ences must be considered in determining whether the ruling which the defendant requested should have been given.

The defendant contends, in substance, that the investment company had the right to mingle the check with its own funds in the regular course of its business, and that in depositing it to the account of the company he only did his duty and committed no wrong.

The agreed facts show that the indictment relates to the proceeds of a note and mortgage, which had been sold and delivered by the company in December, 1889, to Mr. Bennett, and for which he had paid, as the jury might have found, the full value. The note was indorsed by the company without recourse, but there was no assignment of the mortgage, and the record title of that remained in the company, which was accustomed to discharge them in such cases when paid. The principal and interest were guaranteed by the company. Manifestly upon these facts the company held the title in trust for Mr. Bennett.

In August, 1894, the company received a letter from certain parties in Kansas City, stating that they desired to pay off the mortgage, and entering quite fully into the arrangements which they proposed for that purpose.

Thereupon the defendant, without at all disclosing to Mr. Bennett the contents of the letter, but, as the jury might have found, fraudulently concealing them from him, addressed a note to him, asking him to send them the papers for collection, and saying that they wished " to present them to the maker in Kansas City at their due date, with demand for payment." The letter which had been received by the company designated New York as the place of payment, and named the bankers on whom the company was to draw for the amount due, and requested that certain papers which included the note and mortgage should be attached to the draft.

In response to the defendant's letter, Mr. Bennett sent the note and mortgage to the office of the company in Boston, and received therefor a written acknowledgment, signed by the president in the name of the company, and stating that they had received them " for collection." With the contents of this receipt the jury also might have found that the defendant was acquainted.

The effect of this transaction was, we think, to constitute the company the agent or trustee of Mr. Bennett to collect the mortgage and note, and not to create the relation of debtor and creditor between them and him. They received the note and mortgage as bailee for a special purpose. The property remained in Mr. Bennett, and the proceeds, so long as they were capable of identification, were his, and he could have followed them as against creditors of the company. His right and title to them were not affected by the fact that they included interest to the amount of one hundred and fifty dollars, which the company had previously paid him, and for which they had a claim against him. *Commonwealth* v. *Tuckerman,* 10 Gray, 173, 196. *Commonwealth* v. *Smith,* 129 Mass. 104, 110. *Bresnihan* v. *Sheehan,* 125 Mass. 11. *National Mahaiwe Bank* v. *Barry,* 125 Mass. 20. *Peak* v. *Ellicott,* 30 Kans. 156. *McLeod* v. *Evans,* 66 Wis. 401.

The draft and papers were sent to New York by the defendant, and a check for the amount due, payable to the order of the company, was duly received, and was indorsed by the defendant and deposited by him to the credit of the company in its general account at a bank in Boston, and it is to be presumed was paid.

The defendant did not notify Mr. Bennett that the money had been collected, nor inform him what had been done, but concealed the facts from him, and subsequently wrote him several letters, to which it is not necessary now to refer except to say that they contained various misrepresentations in regard to the loan and collection of the money, the effect of which, so far as Mr. Bennett was concerned, is not modified by the fact that similar letters and representations were written and made by the defendant in respect to other collections.

It is agreed that in August, 1894, the company was " unable to pay its liabilities on guaranteed mortgage notes as they became due in the regular course of business," and has been ever since, and that the defendant knew this.

It is also agreed that "in a large number of cases mortgage loans were collected and not paid over at once or in full to the holders of the loans," and that " the proceeds of such collections were used by the Western office in paying foreclosure expenses, taxes, salaries, expenses of local agents, etc., and by

the Eastern office in similar salaries, guaranteed interest, and current expenses." There is no possible ground on which it can be claimed that Mr. Bennett knew of or assented to this course of dealing, which was wholly unjustifiable, or that he was acquainted with the general manner in which the company transacted its business. On the other hand, from the plaintiff's position as manager and treasurer it fairly could be inferred that he did know of it, and that one object which he had in view in procuring the note and mortgage from Mr. Bennett for collection, and in concealing the facts from him, was to turn over the proceeds to the company to be used in the manner thus described. This, we think, the jury would have been justified in finding constituted a fraudulent conversion of the proceeds of the note and mortgage by the defendant. *Commonwealth* v. *Tuckerman*, 10 Gray, 173. *Commonwealth* v. *Foster*, 107 Mass. 221. *Commonwealth* v. *Smith*, 129 Mass. 104. *Rex* v. *Hartley*, Russ. & Ry. 139. *Campbell* v. *State*, 35 Ohio St. 70. *People* v. *De Lay*, 80 Cal. 52. *Clark* v. *Commonwealth*, 97 Ky. 76.

The defendant relies upon *Commonwealth* v. *Stearns*, 2 Met. 343, and *Commonwealth* v. *Libbey*, 11 Met. 64. In the case of *Commonwealth* v. *Stearns*, the defendant was an auctioneer, and the money which he was accused of embezzling was the proceeds of goods which he had sold in the regular course of his business. The court held, in effect, that the money was not impressed with a trust in favor of the owner of the goods, but that the defendant was liable for it as a debtor, and not as a trustee. In *Commonwealth* v. *Libbey*, 11 Met. 64, 66, the court expressly recognizes the rule that in the case of a special agency the disposal of the property "would be a violation of the trust, and an act of embezzlement," but says that "cases of commission merchants, auctioneers, and attorneys authorized to collect demands, stand upon a different footing." In the present case, the jury properly could have found that, notwithstanding what the agreed facts recite in regard to the nature and course of business of the investment company, the note and mortgage were received by it with the knowledge of the defendant under a special agency to collect them and to pay over the proceeds to Mr. Bennett, and that the defendant, instead of paying over the money to Mr. Bennett, deposited the check to the credit of the company,

with the intent thereby to appropriate it to the company's use. This would constitute embezzlement on the defendant's part, and would be none the less so because done by him as treasurer of the investment company. The fact that Mr. Bennett may or may not have considered that the character of the security was improved by the guaranty of the investment company, or have relied upon that more than he did on the mortgage, or *vice versa*, or without discriminating between them have relied upon both, would not be inconsistent with the undertaking of the company to collect and account for the note and mortgage under a special agency, or affect the character of the defendant's acts.

A majority of the court think that the exceptions should be overruled, and it is so ordered.          *Exceptions overruled.*