## MARY G. TALLANT *vs.* WALTER R. STEDMAN.

Suffolk.   December 15, 1899. — June 22, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Action for Money Fraudulently obtained — Election as to Mode of Procedure — Proof in Insolvency of Claim created by Fraud — Law and Fact — Waiver — Promissory Note — Evidence as to Undisclosed Intention.*

In this case, which was an action to recover money fraudulently converted by the defendant to his own use, it having been intrusted to him for the purchase of certain shares of stock, it cannot be fairly held that the acceptance of a certain sum of money, it being the equivalent of the dividend then due upon the shares, sent by the defendant in a letter, and of certain similar subsequent instalments, and the acceptance of two agreements signed by the defendant, one whereby he promised to pay the plaintiff the amount due with interest, and the other whereby he agreed to deliver to the plaintiff or his legal representatives the shares of stock in question, on condition that for each share so delivered a certain sum should be indorsed on a note of even date, the plaintiff not being compelled to accept the stock but having the right to demand payment in money, were an election by the plaintiff to hold the defendant liable to make restitution by transferring to the plaintiff the shares, with the dividends thereon, until the stock should be handed to him, and to relinquish his right to demand from the defendant the amount due, with interest, until repaid.

By proving in insolvency proceedings a claim created by fraud, the creditor does not lose his right to sue the insolvent under Pub. Sts. c. 157, § 84, and even if his testimony is taken literally to mean that, in making his proof in insolvency, he went on a note and not on the fraud, he is not thereby, as matter of law, to be taken to have waived the fraud.

On the issue, in an action to recover money fraudulently converted by the defendant to his own use, whether there was an agreement between the plaintiff and the defendant that certain promises of the defendant were taken in satisfaction of the plaintiff's claim against the defendant for his fraud, it is not competent to put in evidence the undisclosed intention of the plaintiff not to accept the written promises of the defendant in satisfaction of his original claim.

CONTRACT OR TORT, to recover money fraudulently converted by the defendant to his own use.   At the trial in the Superior Court, before *Sherman*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*A. P. Worthen*, for the defendant.

*H. W. Putnam*, for the plaintiff.

LORING, J.   In this case the plaintiff introduced evidence showing that she had been cheated by the defendant out of

$1,152.50 in the following way. On the 15th of May, 1884, she gave to the defendant, who was a stockbroker in Boston, but not a member of the Boston Stock Exchange, an order to buy for her ten shares in the capital stock of the Chicago, Burlington, and Quincy Railroad. On the next day, between the hours of eight and half past eight o'clock in the morning, the defendant called at her house and told her that he had bought the ten shares of stock ordered at 115, and that his commission was one fourth of one per cent, amounting to $2.50; she thereupon paid him $1,152.50. On May 23, the defendant wrote the plaintiff that he could not deliver to her the certificate for this stock, because the books were closed, and would not be open until the 5th of June. As a matter of fact, the defendant did not buy any shares for the plaintiff on May 15; the books for the transfer of the stock in question were not closed until the close of the business day of May 24, nine days later; and the defendant paid the $1,152.50 obtained by him from the plaintiff to T. J. Loud and Company, who were members of the Boston Stock Exchange, and were carrying stocks bought by the defendant for speculation on his own account, to keep his margin on that account good. This account was not kept good, and was subsequently closed out by the sale or purchase of the securities there in question. On the 19th of June, the defendant wrote to the plaintiff, enclosing $20, "the dividend on 10 shares C. B. & Q.," telling her that he had failed, and her money had gone in his failure while "waiting for the books to open." The plaintiff handed this letter to one Jenks (since deceased), who was a cousin of her deceased husband. On July 22 or 23, she received from the defendant a letter thanking her for her kindness, and enclosing an agreement, dated May 16, 1884, whereby he promised to pay to her on demand $1,150, with interest at the rate of $80 per annum, payable quarterly, beginning on March 15, 1884; and an agreement, also dated May 16, 1884, to deliver to the plaintiff or her legal representatives ten shares of the capital stock of the Chicago, Burlington, and Quincy Railroad, within twelve months from the date thereof, on condition that, for each share so delivered, $115 should be indorsed on the promissory note of even date, it being understood that the plaintiff should not be compelled to accept the stock in liquidation

of the note, but should have the right to demand payment in money.

The plaintiff testified that she had received various payments of interest from the defendant, and " soon after his last payment to me on April 3, 1891, I received notice that Mr. Stedman was in insolvency. I then took the note and agreement to, and consulted with, my attorney, and afterwards proved the note upon the usual blank in the Insolvency Court." It appeared that the defendant received a discharge in the insolvency proceedings. This is a suit in tort or contract, and the plaintiff has filed a special declaration setting forth the facts, and concluding with the averment that the defendant " wrongfully and fraudulently appropriated and converted to his own use and embezzled said sum," and a statement that " the defendant owes the plaintiff · the sum of $1,706.59, as shown by said account annexed, as money had and received to her use, with interest thereon from the date of the writ." The account annexed charges the defendant with $1,152.50 and interest, and credits the defendant with the ten payments of $20 with interest.

" At the close of the evidence the defendant asked the court to rule that, on all the evidence, the defendant was entitled to a verdict. More· specifically, that if the original indebtedness was a fiduciary one, the plaintiff lost the advantages of this character by accepting a note in settlement of the same. And also that, even although the debt were originally fiduciary, by the taking of the note under the circumstances shown, and the proving of it in the Insolvency Court as a claim against the defendant's estate, the plaintiff has lost any advantage arising from the original character of the indebtedness."

1. The plaintiff is not, as matter of law, barred from prosecuting this action by accepting the $20 enclosed in the letter of June 19, the two agreements of May 16, and nine instalments of $20 each paid under them.

Taking the letter of June 19 as a whole, it cannot be fairly held that the acceptance of the $20 sent in it, is an election by the plaintiff to hold the defendant liable to make restitution by transferring to her ten shares of the Chicago, Burlington, and Quincy stock, and by paying her the amount of the dividends declared thereon, until that stock should be handed to her,

and to relinquish her right to demand from the defendant the $1,152.50 with interest until repaid. Though the $20 is spoken of in that letter as " the dividend on 10 shares C. B. & Q.," the defendant in the same letter writes that he has tried to borrow the money unsuccessfully, and intends to try to borrow it, " but if not successful I must ask you to wait till I can earn enough to pay it back." It was not true that the $20 was the dividend on ten shares of the stock, but it was the equivalent thereof; nor was it true, as the defendant stated in the letter, that the plaintiff's money had been lost " waiting for the books to open." In short, taking the letter as a whole, the letter did not undertake to put the plaintiff to her election between these two courses of action, and the facts stated by the defendant in connection with the payment of the $20 in question were not true. She was entitled to much more than $20, and it cannot be said that in accepting the $20 enclosed in that letter she elected to take stock and barred herself from recovering the money paid.

Neither can it be held that the plaintiff has made such an election by accepting the written promises of May 16 and the nine instalments paid under them. The acceptance of these promises, and of the nine instalments of $20 each paid under them, are not inconsistent with the plaintiff's pursuing this action, unless the promises were taken in satisfaction of the original claim. A promise by a wrongdoer to make restitution is a promise to do what the law obliges him to do; the giving of such a promise does not of itself raise any presumption that it is taken in satisfaction of the original cause of action against the wrongdoer. It is because the giving of a non-negotiable promissory note in payment of a debt is nothing more than a promise to do what the law obliges the debtor to do that the rule is established that the giving of a non-negotiable promissory note is not *prima facie* payment of the debt for the amount of which the note is given. Shaw, C. J., in *Thurston* v. *Blanchard*, 22 Pick. 18, 21. *Earle* v. *Reed*, 10 Met. 387, 390. That the giving of a non-negotiable promissory note is not *prima facie* evidence of payment, see *Greenwood* v. *Curtis*, 4 Mass. 93; *Maneely* v. *M'Gee*, 6 Mass. 143, 145; *Greenwood* v. *Curtis*, 6 Mass. 358, 371; *Howland* v. *Coffin*, 9 Pick. 52.

It is open to the defendant in such a case to prove that there was in fact an agreement whereby the plaintiff agreed that the non-negotiable note should be and was taken in satisfaction of the debt due to him, and he may prove that such an agreement was made expressly by word of mouth, or impliedly by what took place at the time.

The promise in this case was little, if any, more than a promise of restitution; for though the restitution which would have been enforced at law was the payment of the $1,152.50 with interest, yet equity has a concurrent jurisdiction with law in case of a fraud, and the restitution enforced there is the making of the representation good in kind. In this case equity would have made a decree directing the defendant to buy for and deliver to the plaintiff ten shares of Chicago, Burlington, and Quincy stock. The defendant's promise in this case was a promise to pay the cost of the stock ($1,150), and until that was repaid to pay as interest $80 a year, payable quarterly, beginning on March 15, 1884; the $80 a year, payable quarterly, evidently was based upon the dividend which would accrue on ten shares of the stock in question, assuming that the rate of dividend continued unchanged. To this promise was added another, by which the defendant agreed to deliver ten shares of the stock within the year, with the proviso that the plaintiff was not bound to accept them in payment of the note. In other words, taking the two promises together as one, the promise was to make good the representation made by him, by delivering the stock, which he represented that he had bought, or by payment of the money it was represented to have cost, with the dividends which would be earned on that stock, giving the plaintiff the benefit of the assumption that the rate of dividend would continue unchanged; the option of taking the stock or the money being left to the plaintiff. That is practically a promise to make restitution. It is not so far different from a promise to make restitution as to make the acceptance of it, and of nine instalments of $20 each paid under its acts, inconsistent with the prosecution of this action, if the promises of May 16 were not in fact taken in satisfaction of the original cause of action.

In this case there was evidence that this promise was taken

in satisfaction, but on the evidence disclosed it was not, as matter of law, a satisfaction. In the case at bar it appeared that the promises signed by the defendant were in the handwriting of the plaintiff, copied by her from a draft prepared by Jenks; it did not directly appear that Jenks saw the defendant in behalf of the plaintiff; but as the plaintiff handed the defendant's letter announcing his failure and the loss of her money to Jenks, and Jenks prepared the draft of the promise which was ultimately given by the defendant, there was evidence that the promise was not voluntarily given, but was made at the plaintiff's request. This, coupled with the subsequent payment of ten instalments of interest, amounting to $20 each, and with the proof of the promise in insolvency, made it a question for the jury whether this promise of the defendant was taken in satisfaction by the plaintiff of her claim against him, founded on his fraud.

2. The plaintiff, by proving her claim in the insolvency proceedings, has not lost her right to sue the defendant in spite of his discharge in insolvency. Pub. Sts. c. 157, § 84, after providing that no debt created by fraud (*inter alia*) shall be discharged, contains the provision that " the dividend declared thereon shall be payment of so much of said debt or claim." The original act exempting from the operation of a discharge of a debt arising from defalcation by public officers and others standing in a fiduciary relation, provided that " the creditor thereto may prove the same, and the dividend declared thereon, shall be payment for so much of said claim." St. 1844, c. 178, § 3. That statute applied to defalcations by persons standing in a fiduciary relation, and did not include debts created by fraud; it was re-enacted in the General Statutes in substantially the language of the Pub. Sts. c. 157, § 84. See Gen. Sts. c. 118, § 79. By St. 1879, c. 245, § 5, that section of the General Statutes was amended by extending its provisions to " a debt created by fraud or embezzlement of the debtor." The statute, therefore, expressly provides that proof of the claim in insolvency shall not prevent the creditor from subsequently bringing a suit against the debtor in which his discharge shall not be a bar; and we are of opinion that, even if the testimony of the plaintiff is to be taken literally to mean that, in making her proof in

insolvency, she went on the note and not on the fraud, she is not thereby, as matter of law, to be taken to have waived the fraud.

The statements of this court in *Morse* v. *Lowell,* 7 Met. 152, 153, *Wolcott* v. *Hodge,* 15 Gray, 547, 548, and *Burpee* v. *Sparhawk,* 108 Mass. 111, 114, 115, (on which the defendant relies,) were made with respect to the right of a creditor to whom a debt was due from one in a fiduciary capacity to sue after the debtor had received a discharge under the United States bankrupt act of August 19, 1841, c. 9. In that act there is no provision allowing a creditor, to whom such a debt is due, to prove it without thereby waiving his rights as such creditor; in fact, there is no direct provision in that act that fiduciary debts should not be barred by a discharge, but the conclusion that they were not so barred was reached, as matter of construction, from a consideration of several different provisions of the act. See Story, J., in *In re Tebbetts,* 5 L. R. 259. In *Light* v. *Merriam,* 132 Mass. 283, 284, (the other case relied on by the defendant,) the negotiable promissory notes which were delivered were accepted as payment, and formal releases under seal were given, and the remarks of the court are to be taken as applying to those circumstances.

3. The exception to the admission of the testimony of the plaintiff, that, in taking the note and agreement, she had no intention or purpose of accepting them in settlement or in merger of the original cause of action for fraud, must be sustained. *Connecticut Trust & Safe Deposit Co.* v. *Melendy,* 119 Mass. 449, is really decisive of the point; for in that case it was decided (1) that where it is claimed that an agreement, the taking of which is not *prima facie* payment, was taken in satisfaction of the original cause of action, the issue is whether the parties made an agreement to that effect; and (2) that in such a case the intention of one party is not material. In that case suit was brought on a promissory note, and the defence was set up that the note sued on was paid by the giving of another note indorsed by the defendants, Warner, Hubbard, and Post; this note was given in Connecticut, a jurisdiction in which the giving of a promissory note is not *prima facie* a payment. The plaintiff asked the court to rule that unless the defendants, Warner, Hubbard, and Post, "intended to give their note in

payment of the note in suit, it would not be a payment." It was held that this request was rightly refused, on the ground that the issue before the jury was whether an agreement to take the note in payment had been made. In the case at bar, the issue before the jury was whether there was an agreement between the plaintiff and the defendant that the promises of the defendant of May 16, 1884, were taken in satisfaction of the plaintiff's claim against the defendant for his fraud; and on that issue it was not competent to put in evidence the undisclosed intention of the plaintiff not to accept the written promises of the defendant in satisfaction of her original claim. *Taft* v. *Dickinson,* 6 Allen, 553. *Scudder* v. *Bradbury,* 106 Mass. 422, 428. *Upton* v. *Sturbridge Cotton Mills,* 111 Mass. 446, 453, 454. *O'Donnell* v. *Clinton,* 145 Mass. 461, 463.

*Exceptions sustained.*