CHARLES H. FURBER *vs.* CHESTER L. DANE & others.

Suffolk.    December 2, 1909. — January 10, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* Election of remedy, Trust. *Election. Agency. Stockbroker. Trust.*

In a suit in equity by a creditor of an insolvent firm of brokers against the assignee of the firm for the benefit of creditors and a bank in which the insolvent firm deposited a check received by them as the price of certain shares of stock which had been entrusted to them by the plaintiff for sale, if it appears that the plaintiff failed to present the check to the defendant bank for payment before the close of banking hours on the day after that on which he received it, when if it had been presented it would have been paid, but presented it on the next following day when the assignment had been made and the bank refused payment, but it also appears that the plaintiff was confined to his house by illness during the whole of the day after that on which he received the check and did not know of the embarrassed condition of the firm or that an assignment was contemplated until after the assignment had been made, the plaintiff cannot be deemed to have

elected to base his claim upon the check and to have waived any equitable right as the holder of a fiduciary claim to have his money and to charge for its payment the fund of which it had been a part, and such a fiduciary claim is open to him if he can prove it.

If an employee of a firm of brokers owns certain shares of stock and puts them into the hands of the firm to sell for him in the ordinary course of business, his relation to the firm in the transaction is that of a customer, and in this regard his other relation to the firm of employee is immaterial.

Except in the matters of running accounts and transactions on margin, which here were not considered, stockbrokers in this Commonwealth in conducting their ordinary business act as commission merchants, who in buying and selling for their customers do so in their own names, and, subject to certain limitations, deal with the property put into their hands and with its proceeds as if it were their own, the relation between the broker and his customer, in the absence of special circumstances, being not a fiduciary one but merely that of debtor and creditor.

If a stockbroker receives from a customer shares of stock for sale in the ordinary course of business when the broker is " financially embarrassed," the fact of the broker's financial condition does not create a constructive trust in favor of the customer in the proceeds received by the broker from such sale, if the broker at the time of the transaction did not know that he was insolvent.

BILL IN EQUITY, filed in the Superior Court on January 16, 1908, by a creditor, who also was an employee, of an insolvent firm of stockbrokers against the assignee of the firm for the benefit of creditors and a bank in which the firm had deposited a check received by them as the price of certain shares of stock entrusted to them by the plaintiff for sale, to follow the proceeds of such sale.

The case was heard with four other cases by *Richardson*, J., who by consent of all the parties reserved and reported the cases for determination by this court upon the judge's report of the evidence and an agreed statement of facts. This court ordered that the bill in the present case should be dismissed, in a decision rendered on July 19, 1909, and reported in 203 Mass. 108.

An application by the plaintiff for a rehearing having been denied, the plaintiff on September 21, 1909, filed in the Superior Court a motion to withdraw a certain portion of the agreed statement of facts and for a further hearing of the case. On October 28, 1909, the motion came on to be heard before *Pierce*, J., and on that day the following agreement, signed by the counsel for all the parties, was filed.

" In the above entitled cause it is agreed that the words in the agreed facts, 'said check was duly presented for payment by

said Furber on the morning of January 15, 1908 but was not paid' may be withdrawn and cancelled; and in place thereof the following words may be substituted:

"'The said Furber at the time he received said check from Dane, Smith and Company was not informed that they were financially embarrassed or were contemplating the making of a common law assignment.

"'The said Furber was confined to his house in Milton all day on January 14, 1908, by illness, and did not learn of the common law assignment or that Dane, Smith and Company were in financial difficulties until after the assignment was actually made. Dane, Smith and Company were financially embarrassed on January 13, 1908, when they gave Mr. Furber the check aforesaid.

"'Said check was presented for payment by said Furber at the Merchants National Bank on the morning of January 15, 1908, and was not paid.'

"It is also agreed that the case may be further heard by the court."

The judge reported the case for determination by this court as follows:

"The above entitled suit came on to be further heard before me after rescript upon the plaintiff's motion to withdraw a certain portion of the agreed facts and for a further hearing of the case, and, by agreement of parties, said motion was allowed and one sentence of said agreed facts was cancelled and certain other sentences substituted therefor, as appears by the agreement of parties filed in the case.

"The case thereupon came on before me for further hearing for a final decree. A portion of the original agreed facts and also a part of the oral testimony taken in the five cases heard together in this court and by the full bench of the Supreme Judicial Court were introduced, being all of the agreed facts and evidence which related to this Furber case.

"All parties requesting it, I hereby reserve and report said agreed facts, said evidence and the agreement aforesaid, and all questions of law therein for the consideration of the full court, such decree to be entered as equity and justice may require. It is agreed by all parties that any needed amendment of the

pleadings may be made or may be considered as made in said suit."

*H. R. Bailey*, for the plaintiff.

*R. G. Dodge*, assignee, *pro se.*

SHELDON, J.   In our opinion it must now be taken that the plaintiff, by his failure to present promptly for payment the check which he received from Dane, Smith and Company, has not waived any equitable rights which he had to charge the balance of their bank account with the payment of his demand. As was intimated in the former decision of this case (203 Mass. 108, 112, 113), the issue is not whether he has discharged any of the parties to that check.   No question was or is made but that he still can hold the insolvent firm as his debtors.   But it was considered, upon the facts then appearing, that by his conduct he had manifested an election to stand upon the check and not to claim any equitable right as the holder of a fiduciary claim to trace his money and charge for his payment the fund of which it had been made a part.   Upon the facts as they now appear, this inference cannot be drawn.   He was confined to his house by illness during the whole of the last day for the presentment of the check; he did not know of the embarrassed condition of the firm, or that its assignment was contemplated, until after it had been made.   His inaction was involuntary, and he did not know of any special exigency for prompt action. Under these circumstances, he cannot be deemed to have waived any rights.   The case is analogous to those cases in which it has been held that a primary resort to a mistaken remedy does not necessarily amount to a decisive election.   *Peters* v. *Ballistier,* 3 Pick. 495, 505.   *Butler* v. *Hildreth*, 5 Met. 49, 52.   *Snow* v. *Alley*, 156 Mass. 193.   *Doucette* v. *Baldwin*, 194 Mass. 131, 135. *Furber* v. *Dane*, 203 Mass. 108, 120, 121.

It must be determined, then, whether there was a relation of trust between the firm and the plaintiff, or whether they stood towards each other merely in the relation of debtor and creditor.

The firm were stockbrokers; the plaintiff was one of their employees.   But their relation of employer and employee is immaterial here.   He owned certain shares of stock and put them in the hands of the firm to sell for him.   The firm sold the stock, received the proceeds, deposited them in their own bank

account, and gave to the plaintiff a check for the amount thereof less their commission. The whole transaction was in the usual course of business, differing in no respect from any case in which commission merchants or factors sell property for their customers or consignors, receive payment therefor, mingle the amount so received with their own funds, and give their own checks to their customers for the net proceeds of their respective goods, after deduction of commissions and any expenses which may have been incurred. Except perhaps in the case of running accounts and marginal transactions, with which we are not here concerned, we see no difference between stockbrokers and any other commission merchants. Both buy and sell for their customers; both ordinarily deal in their own names; both, subject to certain limitations, deal with the property and the proceeds of the property put into their hands as if it were their own; both of them, in the established course of business, have the right, at least unless the owner of the property seasonably intervenes, to receive the price of their sales and to deal with it as if it were their own money, accounting to their customers for such amounts as respectively become due to them. But it is settled in this Commonwealth that the relation between such commission merchants or brokers and their customers is, in the absence of special circumstances, merely that of debtor and creditor, and not a fiduciary relation. Such a factor or broker, as was said by Merrick, J., in *Vail* v. *Durant*, 7 Allen, 408, 410, " does not and is not required to keep the money received upon the sale of goods of different consignors in separate and distinct parcels, but mingles all in a common mass, and with the like funds of his own from whatever source derived. In such case he becomes at once a debtor to his principal, and is liable to an action for the balance shown to be due by his account of sales, immediately after its rendition and without any previous demand." *Commonwealth* v. *Stearns*, 2 Met. 343, 348. *Hayman* v. *Pond*, 7 Met. 328. *Commonwealth* v. *Libbey*, 11 Met. 64. *Wolcott* v. *Hodge*, 15 Gray, 547. *Halpine* v. *May*, 100 Mass. 498. *Woodward* v. *Towne*, 127 Mass. 41. *Rice* v. *Winslow*, 180 Mass. 500, 506. *Brown* v. *Corey*, 191 Mass. 189. *Chapman* v. *Forsyth*, 2 How. 202. *In re Gaylord*, 113 Fed. Rep. 131.

Under the rule adopted in this Commonwealth it cannot be

said that the character of the transaction between the plaintiff and the firm was such as to create any fiduciary relation between them or to give to the plaintiff any other or greater rights than those of a general creditor. It is fairly to be inferred from the agreed facts and the evidence that the plaintiff assented to the course of dealing which was adopted and to the establishment thereby of the relation of debtor and creditor between the firm and himself, instead of requiring the specific proceeds of his stock to be paid to him as he might have done. The English cases to which we have been referred, in which it has been either stated or assumed that a trust relation exists between a stockbroker and his customers, have not been followed in this Commonwealth.

The decision in *Commonwealth* v. *Moore*, 166 Mass. 513, turned upon the fact that the money there in question was collected by the Globe Investment Company from the debtor of its customer by virtue of a special contract with the customer to pay the same to him as received. The company had no right to deposit to its own credit the check which it received, or to mingle the proceeds thereof with its own funds. The same principle was acted upon in *Commonwealth* v. *Foster*, 107 Mass. 221, and in *Commonwealth* v. *Smith*, 129 Mass. 104. In the latter case the conviction was sustained because (p. 110) under the instructions given " the jury . . . must have found a fraudulent conversion of money, which the defendant was bound by the terms of his employment to pay over to his principals, as the specific proceeds of sales made by him, and that he had no authority, either by the terms of the contract, or the usage, nature, and course of the business, to mingle the same with his own funds."

In *Raphael* v. *Mullen*, 171 Mass. 111, the original transfer to the defendant was made upon a trust, and it was found as a fact by the master that a trust relation still existed between the parties. But in the opinion of the court Holmes, J., recognized and stated the rule that in this Commonwealth a factor " is not bound to keep the proceeds of goods sold by him distinct, but is authorized to mingle them with his own funds, that is to say, to make himself a debtor for the amount."

In *Cushman* v. *Snow*, 186 Mass. 169, the plaintiffs' recovery was only for the money which the defendant after his appoint-

ment collected from the purchasers of their goods (p. 172). The plaintiffs made no claim that they could follow and hold moneys which the factor had collected from such purchasers before his insolvency; and there is nothing in the opinion which intimates that such a claim could have been sustained. The point decided was as to the application of payments that had been made by the factor. *Doucette* v. *Baldwin*, 194 Mass. 131, merely decided that the undisclosed principal could come in and take the money for which his goods had been sold, before it was paid over to his agent or his agent's trustee in bankruptcy. The firm in the case at bar did not receive the plaintiff's money for the specific purpose of buying therewith certain specified stock for him, as in *Wahl* v. *Tracy*, 139 Wis. 668, or under the false pretense that they had made such a purchase, as in *Tallant* v. *Stedman*, 176 Mass. 460.

Nor can it be maintained that there was here a constructive trust by reason of the fact that the firm were financially embarrassed when they received the shares from the plaintiff and collected their proceeds. The plaintiff relies on the analogy of the case to that of an insolvent bank receiving a deposit from an innocent customer who is ignorant of its insolvency. *Wasson* v. *Hawkins*, 59 Fed. Rep. 233, and cases cited. But the right of such a depositor springs from the fraud which has been practised upon him by means of the false representation practically made to him that the bank is conducting its business in the ordinary way and is solvent, while in reality it is insolvent and known by its managers to be so. The effect of this fraud is to make the bank a trustee *ex maleficio*. But the depositor must show that a real fraud has been practised upon him, and to do this he must show affirmatively both that the bank was actually insolvent when it received his deposit and that its managing officers then knew this to be the fact. *St. Louis & San Francisco Railway* v. *Johnston*, 133 U. S. 566, 578. *Quin* v. *Earle*, 95 Fed. Rep. 728, 732. *Illinois Trust & Savings Bank* v. *First National Bank*, 15 Fed. Rep. 858. *Williams* v. *Van Norden Trust Co.* 104 App. Div. (N. Y.) 251. These facts do not appear in this case. There is nothing to show that the members of the firm knew that it was insolvent at the time of this transaction. The mere statement that they were " financially em-

barrassed" when they gave their check to the plaintiff is not enough. We do not even know how desperate their circumstances were.

The plaintiff must be left to his rights as a general creditor. According to the terms of the report the order must be

*Bill dismissed.*