COMMONWEALTH *vs.* GEORGE L, HUTCHINS.

Suffolk.     January 15, 1919.—February 27, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Larceny. Agency.*

At a trial for larceny by embezzling funds which the defendant, who was not an attorney at law, was employed as an attorney in fact to collect, it appeared that the defendant learned that certain persons were entitled to legacies under a will that had been proved in another State, and induced seven of these persons to execute powers of attorney authorizing him to collect the legacies due to them for a charge not to exceed fifteen per cent, that he thereupon employed a lawyer in the other State, who collected and turned over to him, after deducting his fee, sums amounting to over $5,000 due to the legatees by whom the defendant was employed, that as the defendant received these sums he deposited them in his own name as trustee in an account at a trust company, in which, before such deposits, he had a credit of only thirteen cents, and that he used up the whole fund by small drafts upon it, which it could have been found were used to pay his living expenses, that both before and after he received and deposited the funds thus collected he replied to inquiries from the legatees entitled to the money by a series of false representations purporting to explain causes for delay in collecting the money, stating falsely in substance that the estate was not settled, and that he failed to pay over any of the money until he was arrested two years and a half after he had collected the legacies in full. It could have been found that during all the period in question the defendant was not employed by any one except the seven legatees entitled to the money collected by him. *Held*, first, that the fact, that the defendant had not taken out from the funds collected by him the fifteen per cent to which he was entitled, did not prevent the funds deposited in the trust company from belonging to the legatees for whom he had collected the money, and, second, that it could have been found that the defendant deposited in his own bank account the funds belonging to the legatees amounting to over $5,000, not in the ordinary course of business as an agent acting for several principals, but with the intent at that time to defraud the seven legatees of their property in those sums of money.

Accordingly in the case above described it was *held* that the presiding judge was right in refusing to order a verdict for the defendant.

INDICTMENT, found and returned in the county of Suffolk on June 9, 1917, in several counts charging the defendant with larceny by stealing money amounting to $5,179.39, the property of John C. Annable and six other persons named, as described in the opinion.

In the Superior Court the defendant was tried before *Keating,* J. At the close of the evidence for the Commonwealth, the substance of which is described in the opinion, the defendant rested upon the Commonwealth's case and offered no evidence. The defendant asked the judge to order a verdict of not guilty. The judge refused this request and submitted the case to the jury, who returned a verdict of guilty. At the request of the defendant the judge reported the case for determination by this court. If the refusal to order a verdict for the defendant was correct, the verdict was to stand. If the judge should have ordered such a verdict, the verdict was to be set aside and a verdict of not guilty was to be ordered.

*S. Bates,* for the defendant.

*A. C. Webber,* Assistant District Attorney, for the Commonwealth.

LORING, J. The defendant in this case, in some way not disclosed in the evidence, learned of the fact that there were eight persons in Massachusetts who were entitled to a legacy under a will proved in the State of Rhode Island, of which one Alfred S. Clarke was executor. So far as appeared the defendant was without occupation or business and it appeared expressly that he was not a lawyer. These people were all elderly persons of small means, living in the country. The defendant went to them and persuaded seven out of the eight persons to appoint him their attorney to collect and receive "any moneys or other estate" coming to them under the will, "the expense therefor not to exceed fifteen per cent of the amount recovered or received." Four of them signed a power of attorney to that effect on May 15, 1912, and the other three signed a similar power of attorney on May 28, 1912. The eighth heir did not appoint the defendant his attorney. The defendant retained counsel in Rhode Island to collect the money and other property coming to the seven heirs who had made him their attorney. Within two months thereafter (namely on July 12, 1912,) the executor paid over to the

Rhode Island counsel in full settlement of the legacy due the seven heirs $1,758.53 in cash, a mortgage note for $3,200 and a $1,000 bond of a western railroad. The $1,758.53 was paid over by the Rhode Island attorney to the defendant on July 16, 1912; the bond was sold, the mortgage debt was collected and the proceeds from both were paid over by the Rhode Island counsel to the defendant, less $250 charged by them for their services, as follows: July 16, 1912, $1,547.46, July 22, 1912, $734.67, August 26, 1912, $508.38 and October 22, 1912, $2,338.88. Between the second and third of these payments the Rhode Island counsel returned $50 of the $250 retained by them as their fees on the defendant complaining of the amount which they had charged. This made the total sum received by the defendant $5,179.39. The checks by which the counsel in Rhode Island made these payments to the defendant were payable to George L. Hutchins, Attorney. Hutchins deposited them in an account in the Liberty Trust Company which stood in his name as George L. Hutchins, Trustee. These deposits were made in each case within a day or so after the sums were received by him. When the first deposit was made on July 17, 1912, the amount to the credit of the defendant in that account was thirteen cents. The seven heirs in question from time to time wrote to the defendant asking how matters stood. In answer to one of them the defendant wrote on October 25, 1912, (three days after the last payment was made by the Rhode Island attorneys to him,) that he had seen a broker with respect to the bond and that it was a bond of an old issue for which there was not much demand and that the broker also said that owing to the depression in the stock market it would be well not to rush the sale, but that he was confident that he could dispose of it by the middle of the next week and that he had instructed him to do so. This was a false representation, for as we have said, three days before this letter was written the defendant had received in cash $2,338.88 in final settlement of all moneys due to the seven heirs in question including the proceeds from the sale of the bond. Later on, another of the seven heirs wrote the defendant on March 10, 1913, and again another wrote about August 27, 1913, and yet another wrote on December 3, 1913, and in each case the defendant put off his principals by false representations in substance that the estate was not settled. It

is not necessary to go into the details of these false representations. Finally one of the heirs put the matter in the hands of an attorney and on May 15, 1915, (two years and a half after he had collected the legacy in full from the Rhode Island attorneys,) the defendant was arrested. At that time he had spent all of the $5,179.39 collected by him for these seven heirs except $1,671.86. On June 9, 1917, the defendant was indicted for the statutory crime of larceny. The indictment contained five counts; one charged him with larceny of the whole sum and each of the other counts charged him with larceny of each of the individual sums stated above except the $50. Up to the time of his arrest with the exception of one deposit of $102.10 and of a cross deposit and draft of $200, no money had been deposited by the defendant in this bank account. Later on some deposits do appear, but by February 1, 1916, (more than eight months after his arrest and nearly a year and a half before he was indicted,) the amount to the credit of this account was twenty cents. At the trial the government put in the evidence shortly stated above and a transcript of the bank account. The defendant put in no evidence. The presiding judge refused to direct the jury to find a verdict of not guilty. To this ruling the defendant took an exception. The jury returned a verdict of guilty. The case is here by report as to the correctness of the ruling by which the judge refused to order a verdict for the defendant.

No exception was taken to the charge and no question with respect to it is reported to us. We are not therefore concerned with the instructions given to the jury.

The defendant's first contention is that since he had a right to take out of the sums collected by him fifteen per cent for his services he cannot be convicted for having embezzled any one of the sums mentioned in the five counts of the indictment. That defence is disposed of by *Commonwealth* v. *Lannan,* 153 Mass. 287. The ground of the decision in that case is that, where an agent has a right to take for himself a part of a fund belonging to another, the mass belongs to the other until the agent has exercised his right.

The defendant's second contention is based upon *Commonwealth* v. *Stearns,* 2 Met. 343, and *Commonwealth* v. *Libbey,* 11 Met. 64. In *Commonwealth* v. *Stearns* an auctioneer put moneys collected by him for the sale of property of a customer into a

bank account in which he had kept all moneys coming to him in the course of his business. Later he failed to pay over to the customer the money due to him. It was held that from the nature of his business an auctioneer has a right to substitute his obligation for money received on account of a principal and consequently that he was not liable for embezzlement under Rev. Sts. c. 126, § 29. This rule was followed in *Commonwealth* v. *Libbey,* where the defendant was employed to collect bills due to a newspaper establishment. On the defendant in that case insisting that "The present case, as stated in the report, sets forth only the agency of the defendant as a collector of bills for a single newspaper establishment," the court said: "but practically we know very well this class of agents are employed in a collecting tour, by many different offices." Then follows a paragraph which is particularly relied upon by the defendant in the case at bar: "In the case of a domestic servant, and, to some extent, in the case of a special agency, the right of property and the possession continue in the principal, and a disposal of the property would be a violation of the trust, and an act of embezzlement. But cases of commission merchants, auctioneers, and attorneys authorized to collect demands, stand upon a different footing; and a failure to pay over the balance due to their employers, upon their collections, will not, under the ordinary circumstances attending such agency, subject them to the heavy penalties consequent upon a conviction of the crime of embezzlement."

In the subsequent case of *Commonwealth* v. *Smith,* 129 Mass. 104, (where *Commonwealth* v. *Stearns* and *Commonwealth* v. *Libbey* were relied upon in defence,) the defendant was a collecting agent for one employer. It was held that the jury were warranted in finding that he had no right to substitute his obligation for his employer's money. There is a similar decision in *Coyle* v. *United States Fidelity & Guaranty Co.* 217 Mass. 268. In the case at bar the jury were warranted in finding that the defendant at the times here in question was not employed by any one except the seven heirs. Whether under these circumstances the seven heirs could be treated as one employer and so this case could be brought within *Commonwealth* v. *Smith* and *Coyle* v. *United States Fidelity & Guaranty Co. ubi supra,* we do not find it necessary to decide.

In *Commonwealth* v. *Moore*, 166 Mass. 513, the treasurer of a mortgage investment company deposited the proceeds of a mortgage (which had been delivered to the company to collect) in the company's bank account and then used it in paying the expenses of the company. It was held that the jury "could have found that, notwithstanding what the agreed facts recite in regard to the nature and course of business of the investment company, the note and mortgage were received by it with the knowledge of the defendant under a special agency to collect them and to pay over the proceeds to Mr. Bennett, and that the defendant, instead of paying over the money to Mr. Bennett, deposited the check to the credit of the company, with the intent thereby to appropriate it to the company's use." In the view which we have taken of the cases of *Commonwealth* v. *Stearns* and *Commonwealth* v. *Libbey*, it is not necessary to decide whether a similar finding could have been made in the case at bar.

It is the contention of the learned counsel for the defendant that *Commonwealth* v. *Stearns* and *Commonwealth* v. *Libbey* have decided that under no circumstances can an auctioneer or other agent acting for a number of principals be guilty of embezzlement if he uses for his own benefit money collected by him for one of his principals. We are of opinion that these cases cannot be taken to be authorities for that proposition of law. The case which the court had in mind in deciding *Commonwealth* v. *Stearns* and *Commonwealth* v. *Libbey* was the case where an agent (who acts for several principals) in the ordinary course of business mixes moneys received for his different principals in one fund and substitutes his obligation to the principals for the money received on their account. That such an agent has this right from the nature of his business is established. *Vail* v. *Durant*, 7 Allen, 408. *Furber* v. *Dane*, 204 Mass. 412. In such a case the money collected by such an agent is the money of the principal until it is mixed by the agent in the regular course of business under this implied right to substitute his (the agent's) obligation for the principal's money. See for example *Doucette* v. *Baldwin*, 194 Mass. 131; *Furber* v. *Dane*, *ubi supra* at page 418. But it does not follow from this that such an agent can under no circumstances be guilty of embezzling money collected by him for one of his principals. The typical case of such an agent is a factor, and for convenience we will speak of

such an agent as a factor. Suppose a factor hopelessly insolvent receives payment of a large sum on account of one of his principals, cashes the check at his own bank and absconds with the proceeds. In that case there could be no question of the right of a jury to find the factor guilty of embezzlement. The right of a factor to use his principal's money substituting therefor his own obligation is a right to do that in the ordinary course of business. In the case put above the jury would be warranted in finding that the factor did not deposit his principal's check in the ordinary course of business and that he did deposit it and take the proceeds with intent to defraud his principal. In the case at bar it may be that it is going too far to say that the jury were warranted in finding that the defendant was hopelessly insolvent when he put the four sums here in question into his bank account. Perhaps the fact that he had only thirteen cents in the account when he deposited the first sum to his credit and that he used up the whole fund in small drafts, which on the evidence might have been used to pay his living expenses, is not of itself enough. But, whether that be so or not, the jury were warranted in finding in the case at bar that when the defendant mixed $5,179.39 received by him for these seven heirs with the thirteen cents which he had to his credit he did it intending at that time to defraud the seven heirs of the money so deposited, assuming that he comes within the rule of *Commonwealth* v. *Stearns* and *Commonwealth* v. *Libbey.* And, if the jury did find that the defendant mixed the $5,179.39 belonging to the seven heirs with his (the defendant's) thirteen cents, intending at the time to defraud the seven heirs of their property, they have found that he did not exercise the right (if he had it) of mixing the moneys of his principals, substituting his obligation for the money itself by virtue of the right he had so to do in the ordinary course of business. The moneys received by the defendant were the moneys of the seven heirs when they were received by him. If he had the right to use those moneys, substituting his obligation for them, the moneys remained the moneys of the seven heirs until he exercised that right. If in depositing the $5,179.39 he did not honestly exercise the right (assuming that he had it) of depositing in his own bank account the $5,179.39 in the ordinary course of his business but he deposited it in his bank account for the purpose of defrauding the seven heirs of their property, he is

guilty of embezzlement and there is nothing in the doctrine of *Commonwealth* v. *Stearns* and *Commonwealth* v. *Libbey* to the contrary.

The evidence in the case at bar warranted a finding that when the defendant deposited the $5,179.39 and the sums set forth in the other counts of the indictment in his own bank account, he did it, not in the ordinary course of the business of an agent acting for several principals, but with the intent at that time to defraud the seven heirs of their property in those sums of money.

*Verdict to stand.*