JOSEPH E. DOUCETTE *vs.* DWIGHT BALDWIN & others, trustees.

Suffolk.   December 5, 1906. — February 26, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Agency.   Bankruptcy.   Broker.   Election.   Estoppel.*

If a New York stockbroker, having an office in Boston but not belonging to the Boston stock exchange, is employed by some of his customers to buy for them on margin shares of certain stocks which are dealt with only on the Boston stock exchange, they knowing this fact, and he employs a Boston broker who is a member of that exchange to buy the shares, and the last named broker buys them and carries them with money supplied to him as margins by the New York broker, who has obtained the necessary sums from his customers for the pur‑ pose although mingling the money with his own and not keeping it separate for transmission, and the New York broker does not disclose to the Boston broker that in ordering the purchases of the shares he is acting for his several customers and not for himself, the Boston broker is acting as agent of those

customers, the undisclosed principals of the New York broker, and not as agent for that broker, and, if the New York broker is adjudicated a bankrupt, his trustee in bankruptcy as against the customers of the bankrupt is not entitled to any fund or shares of stock remaining in the hands of the Boston broker after settling these transactions.

The erroneous choice of a remedy which does not exist is not an election which precludes the prosecution of an inconsistent rightful remedy.

If a person, erroneously supposing that he has a claim against the estate of a bankrupt, proves his alleged claim in bankruptcy, this does not estop him from asserting that the whole fund and property involved in the claim belong to him and not to the trustee in bankruptcy.

BILL OF INTERPLEADER filed in the Supreme Judicial Court on January 23, 1905, by a stockbroker, who was a member of the Boston Stock Exchange, doing business under the name of Joseph E. Doucette and Company, to determine the ownership of a fund of $8,817.51, and of two hundred shares of stock of the Hidden Fortune Mining Company, and one hundred shares of the Oro Hondo Mining Company, which from time to time had been deposited in the hands of the plaintiff by Jacob Berry and Company, New York stockbrokers, as margins for an account carried by the plaintiff for Berry and Company.

The case first was heard by *Morton*, J., who made a memorandum of findings, and at a later stage was heard by *Braley*, J., who made the final decree. The facts were as follows:

Berry and Company were members of the New York Consolidated Stock Exchange, and had offices in New York, Boston and elsewhere for the transaction of their business as brokers and bankers. In their Boston office customers gave them orders to buy and carry on margin for their respective accounts various stocks which were dealt in only on the Boston Stock Exchange. Berry and Company then gave orders to Doucette to buy the Boston stocks on margin for their account. Berry and Company called for margins from such customers, and received six per cent interest on the unpaid balances for carrying the stocks. As Doucette executed the orders for Berry and Company the stocks were charged in their account, which stood in the name of H. L. Bennett, one of the partners of Berry and Company, into which from time to time various amounts were paid by check of Berry and Company. They were charged five and one half per cent interest on any balance, and the stocks were retained by Doucette as security. Specific amounts were not

paid by Berry and Company to Doucette against each order to purchase stock corresponding with an amount paid to Berry and Company by their customer, but on the contrary there was a general running account so that specific purchases were made against their general balance. Doucette did not know, and he never was informed, for whom, if any one, Berry and Company were acting in making the various purchases and sales charged in the Bennett account, and knew only Berry and Company in these transactions, and looked only to them and their credit in their dealings. Berry and Company's customers were not informed by them of any of the relations between that firm and Doucette, although there was some evidence that two of the claimants in the course of their dealings with Berry and Company learned that Berry and Company were buying Boston stocks of Doucette.

On December 1, 1904, Berry and Company were petitioned into bankruptcy, and Doucette closed out the Bennett account with the result that there remained in his hands the fund and stocks which are the subject of the present bill. The trustees in bankruptcy of Berry and Company claimed the whole fund and stocks as successors in title to the bankrupts. Dwight Baldwin and John Collins, two customers of Berry and Company, who had margin accounts with that firm, claimed $3,773.98 and $3,541.15 respectively as the proceeds of that part of their accounts with Berry and Company which covered Boston stocks, on the theory that they were the undisclosed principals for whom Berry and Company had acted in dealing with Doucette. It appearing that there were at least seven other customers who were similarly situated, the court issued an order of notice to them to present their claims by a given date or be barred. Mrs. Frances A. Conant and Albert E. Fowler made such claims. The court found against Fowler, and allowed the claims of Mrs. Conant, Baldwin and Collins for $190.10, $3,773.98 and $3,541.15, respectively. A decree was entered accordingly; and the trustees in bankruptcy of Berry and Company appealed.

*L. M. Friedman,* (*P. A. Atherton* with him,) for the trustees in bankruptcy of the estate of Jacob Berry and Company.

*A. Whiteside* ( *C. R. Lamson* with him,) for the defendants Baldwin and Collins.

*E. E. Elder*, for the defendant Conant.

No counsel appeared for the plaintiff.

BRALEY, J.   If the bankrupt firm acted solely as agents in the purchase of the stocks, the right of the trustees to participate in the distribution of the fund must be postponed until the demands of the several claimants are satisfied.   Upon reading the evidence it appears to have been substantially uncontroverted that, not being members of the Boston Stock Exchange, the bankrupts when their customers desired to buy certain copper stocks employed a member to make the purchase.   The claimants respectively gave orders to buy a certain number of shares of these stocks to be carried on a margin.   In each instance upon receipt of the order to buy accompanied with the money required, without disclosing the name of the customer, the order immediately was transmitted by telephone to the plaintiff, who was a member, and by whom it was executed. Of the claimants, Baldwin and Collins knew, but Mrs. Conant and her agent were ignorant with whom the firm dealt, yet all understood that because they were not members Berry and Company were unable to buy the stocks on the floor of the exchange.   When notified from time to time that further advancements had become necessary to maintain the margin, on making payments the money went into the general funds of the firm by whose check the amount due then was paid to the plaintiff.   There is no evidence that books of account were kept by Berry and Company in which they entered the names of these customers with the date, price of the stock and number of shares bought by each, nor does it appear that they received any compensation for their services.   Until their assignment for the benefit of creditors the plaintiff rendered monthly statements, and supposed and believed that he was dealing with them as principals.   His books contained itemized accounts in the name of one of the members of the firm of the various purchases and sales, but after their failure upon notice from two of the claimants he closed the account, leaving a balance, out of which, if entitled to recover anything, it is conceded by the trustees they should be allowed their respective claims.   It is from these facts that the legal relations of the parties must be ascertained. In substance the bankrupts with the knowledge of the several

claimants, not being able to buy personally in a regular way the stocks desired, were employed to buy from other brokers, and selected the plaintiff. At no period was it contemplated that Berry and Company should become principals, and the plaintiff their agent, but they were expressly engaged to act for the claimants, by whom, as required, the money for margins was supplied, and neither the fact that commissions were not shared nor the failure to disclose their agency worked any change in the character of their original employment. The remaining amount necessary to purchase was advanced by the plaintiff who afterwards carried the stocks, and with whom, and not with the bankrupts, the claimants sustained the contractual relation of debtor and creditor. *Rice* v. *Winslow*, 180 Mass. 500, 502. While the money received before transmission was mingled with their own, so that its identity being lost specific payments could not be traced, this conversion conferred no authority to use these funds to speculate in stocks for the benefit of themselves, as they could not act legally in the double capacity of buyers and sellers. *Commonwealth* v. *Cooper*, 130 Mass. 285, 288. Instead, upon his employment, the plaintiff became the agent of the principals of the bankrupts even if undisclosed by them. *Eastern Railroad* v. *Benedict*, 5 Gray, 561, 562. *Byington* v. *Simpson*, 134 Mass. 169. If before such knowledge a settlement had been effected he would have been discharged, but upon their disclosure the money could be recovered by the principals to whom it belonged. *Barry* v. *Page*, 10 Gray, 398. *Foster* v. *Graham*, 166 Mass. 202. See *Cushman* v. *Snow*, 186 Mass. 169, 173, 174. The trustees, having succeeded only to such rights as the bankrupts had, stand no better and have failed to prove that they are entitled to the money. *King* v. *Cram*, 185 Mass. 103, 104.

By proving her claim in bankruptcy Mrs. Conant is not barred from recovering, for, if she mistakenly supposed such right existed, this is insufficient to prevent her from intervening in these proceedings for the collection of her debt. *Snow* v. *Alley*, 156 Mass. 193, 195.

The findings of fact made by the single justice are amply sustained by the evidence, and the final decree should be affirmed.

*So ordered.*