NATIONAL SECURITY BANK OF BOSTON *vs.* CHARLES R. BATT, executor, & another.

Suffolk.   March 18, 1913. — September 12, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Equity Jurisdiction,* Interpleader.   *Equity Pleading and Practice,* Bill.

In a bill of interpleader brought by a national bank against the widow of a deceased depositor of the plaintiff and the executor of the will of such deceased depositor, who also was the president of the plaintiff, it was alleged that the deceased depositor on the day before his death drew a check on the plaintiff for $10,000 payable to his wife and delivered it to her, having then a balance greater than that amount to his credit, that the day after his death his widow presented this check to the plaintiff and payment was refused, that before this presentation of the check the plaintiff had paid another check drawn by the depositor which reduced the balance to the credit of the estate of the depositor somewhat below $10,000, that later the executor deposited funds which made the balance of the testator's account somewhat greater than $10,000 and thereupon transferred to the credit of the testator's widow in the plaintiff bank the sum of $10,000, that thereafter the executor, being apprehensive that he had acted without authority in doing this, caused the transaction to be reversed by having the account of the widow charged with the sum of $10,000 and his account as executor credited with a like amount, whereupon the widow drew her check on the plaintiff for $10,000, and, on payment being refused, brought an action at law against the plaintiff for that amount. Upon demurrer, it was *held,* that the bank could not maintain the bill to compel the widow and the executor to interplead for the purpose of determining the validity of their respective claims to the fund in the hands of the plaintiff, because the plaintiff might have made itself liable to the widow by crediting the sum of $10,000 to her account so as not to be in the position of a disinterested stakeholder.

In a bill in equity to have two defendants ordered to interplead so that their respective rights to a fund in the hands of the plaintiff may be determined, if the specific allegations of the bill disclose a ground on which the plaintiff

may be held liable to one of the defendants, which cannot be passed upon in a suit of interpleader, the bill cannot be maintained, although it contains a general allegation that the plaintiff holds the fund for the true owner and has incurred no independent liability to either of the defendants.

MORTON, J. This is a bill in equity in which the plaintiff seeks to interplead the two defendants in respect to a fund of $10,000 alleged to be held on deposit by it. There was a demurrer by the defendant Mary Rennison which was sustained and a decree was entered* dismissing the bill with costs. The plaintiff and the other defendant appealed.

We think that the decree sustaining the demurrer and dismissing the bill was right and should be affirmed. From the facts alleged in the bill it appears that John Rennison the husband of the defendant Mary Rennison died testate on the ninth day of July, 1911, and that on August 17 his will was duly admitted to probate and letters testamentary were issued to the defendant Charles R. Batt, the executor named therein. On the eighth day of July, the day before he died, John Rennison drew on the plaintiff bank, where there was then on deposit to his credit the sum of $10,354.12, a check for $10,000 in favor of Mary Rennison, and delivered the same to her. This check was presented by Mary Rennison on Monday, July 10, to the defendant Batt, who was the president of the bank, and to the cashier, and payment thereof was demanded by her, which was refused by Batt on the ground that he did not then know whether the bank could rightfully pay it. Previous to the presentation of the check by Mary Rennison and before the bank knew of that check, the bank had paid a check for life insurance for $444.10, drawn by John Rennison, so that at the time of the presentation of the check for $10,000 by Mary Rennison the amount on deposit to the credit of John Rennison was $9,910.02. The amount to the credit of John Rennison's estate continued to be less than $10,000 until July 13, when Batt, in anticipation of the receipt of rents due to John Rennison before his death and which were to be paid and were in fact paid before August 1, caused the sum of $108.33 to be deposited to the credit of John Rennison's estate, which with the amount then standing to the credit of the estate made the total amount to the

---

* In the Superior Court by order of *Morton*, J.

credit of the estate $10,022.48, and Batt thereupon caused the sum of $10,000 to be transferred from said sum of $10,022.48 to the credit of Mary Rennison in said bank. There is an allegation in the bill that neither on July 10, when the check was presented by Mary Rennison, nor on July 13, when the transfer aforesaid was made, were there sufficient moneys on deposit with which to pay said check. This allegation is inconsistent, so far as relates to the amount on deposit on July 13 at the time when the transfer was made, with previous allegations, and we assume that it is in this respect erroneous. Subsequently, on September 27, Batt, having been advised that Mary Rennison was not entitled to said sum of $10,000 and that it belonged to the estate of John Rennison and had been wrongfully credited to the account of Mary Rennison, or that at any rate the question was so doubtful that for his protection as executor and for the protection of those interested under the will the money should be placed to the credit of the executor or otherwise secured till the question should be determined by the court, caused the $10,000 to be charged against the account of Mary Rennison and credited to his account as executor in order to preserve the rights of all parties. On the third of October, 1912, Mary Rennison, asserting that said fund of $10,000 was rightfully to her credit and should be so considered, and that she was entitled to draw her check on the bank for that sum, drew her check on the bank for that amount and demanded payment thereof, which the bank refused to pay on the ground that it had no funds to her credit and that she had largely overdrawn her account. Thereupon Mary Rennison, by writ dated October 4, 1912, and returnable to and with the declaration entered in the Superior Court on the first Monday of November, 1912, brought an action at law which is now pending in that court against the bank for the recovery of $10,000, alleging that on said October 3, at the time of the presentment of the check drawn by her and of demand of payment, she had that amount to her credit in the bank, whereas, as the bill avers, she well knew that such amount or any amount would not have been there to her credit unless said fund of $10,000 was to be considered as then held in deposit by the bank on her account, and that even with that there were not sufficient funds to her credit to pay the check of October 3, and that said action was in fact brought to recover said fund on the theory that

it legally and equitably belonged to her and should be considered as standing to her credit in the bank. The bill avers further that the plaintiff holds said fund for the true owner and has no claim to or interest in said sum and has incurred no independent liability to either of the defendants other than that created by the possession of said fund. The bill prays, amongst other things, that the defendant Mary Rennison may be enjoined from prosecuting the action at law commenced as aforesaid, and that the defendants may interplead respecting their claims to said sum of $10,000.

It is manifest, we think, from this recital, that the defendant Mary Rennison may have a claim against the plaintiff growing out of the transactions between it and her because of the transfer by it of $10,000 from the account of John Rennison to her account, which is independent of the question whether she or the executor would be or is entitled to the fund of $10,000 represented by the check given to her by her husband. In other words it may turn out, according to the allegations of the bill, that, if she has any right or title to the $10,000 for which she has brought suit, she has derived it from the plaintiff and not from her husband, although the check which she received from her husband was what led to the transactions between her and the plaintiff on which she relies. In such a case it is plain that a bill cannot be maintained by the bank to compel her and the executor to interplead. As was said in *Fairbanks* v. *Belknap,* 135 Mass. 179, 184, "The office of such a suit is to protect a party, not against a double liability, but against a double vexation on account of one liability." See *Third National Bank* v. *Skillings Lumber Co.* 132 Mass. 410; *National Life Ins. Co.* v. *Pingrey,* 141 Mass. 411; *Weatherbee* v. *New York Life Ins. Co.* 182 Mass. 342; *Welch* v. *Boston,* 208 Mass. 326. By its allegation that it holds the fund for the true owner and has incurred no independent liability to either of the defendants, the plaintiff cannot avoid the effect of other allegations relating to the transfer by it of the sum of $10,000 from the account of the estate of John Rennison to the account of the defendant Mary Rennison. Whether, as the defendant Batt argues, no contractual relation between the defendant Rennison and the plaintiff was created by the putting of the $10,000 to her credit by the bank, and whether she acquired thereby any independent cause of action, cannot be

·determined in this proceeding. Neither can the question of the validity of the check given to her by her husband be settled in this proceeding.

It follows that the decree dismissing the bill with costs was right.

*Decree affirmed with costs of the appeal.*

*W. F. Prime,* for the plaintiff.

*S. Z. Bowman,* for the defendant Charles R. Batt, executor.

*S. L. Whipple & A. Lincoln,* for the defendant Mary Rennison, were not called upon.