F. LUCAS SUTCLIFFE *vs.* JOHN W. CAWLEY & others.

Suffolk. March 8, 1921. — December 15, 1921.

Present: RUGG, C.J., BRALEY, CARROLL, & JENNEY, JJ. '

*Equity Jurisdiction,* To reclaim proceeds of customer's bonds hypothecated by stockbroker. *Stockbroker. Bankruptcy. Pledge. Equity Pleading and Practice,* Amendment, Decree, Appeal.

A customer of a stockbroker deposited certain bonds of the par value of $5,000 with him "as margin upon a trading account." The stockbroker pledged the bonds with other securities of other customers to a trust company as security for a loan, and subsequently, on a July 22, at a time when, exclusive of the bonds, he owed the customer $3,400, he made an assignment for the benefit of his creditors and on the same day was petitioned into bankruptcy in involuntary proceedings. The customer on that day notified the trust company, after it had begun to liquidate the securities it held for the loan to the stockbroker but while it still held the bonds in question, of his individual interest as owner of the bonds, with a request "that before resorting to" them, it should sell and apply upon the stockbroker's obligation to it "the other collateral security therefor" which it held and he was told by its treasurer that it could by selling "the other collateral liquidate the loan and have about $6,000 surplus" and that it would hold the bonds. On August 6 and 7 without the knowledge of the customer, the trust company sold and delivered the bonds in question and, after payment of the stockbroker's debt to it, retained a balance of $9,304. The customer on August 8 brought a suit in equity against the stockbroker, the trust company, and the trustees in bankruptcy of the stockbroker to recover the

proceeds of the bonds.    No defence of misjoinder of parties was alleged in the pleadings, and there was no petition to require interpleading by the owners of the other securities which had been pledged to the trust company by the stockbroker and sold by it.    It appeared that various petitions in the nature of reclamation petitions or petitions to establish liens on the cash and securities in the hands of the trustees had been filed in the bankruptcy proceedings, among which were petitions by owners of some of the other securities pledged to the trust company and sold by it.    The judge of the Superior Court heard the suit on June 10 and 11 of the next year, and on June 22 ruled that the case ought not to be ordered "to stand over so as to allow the bill to be amended by bringing in other parties, but that the bill should be dismissed and the plaintiff should be relegated to his right to bring a suit in the" bankruptcy court "to establish his equitable rights in the surplus fund in controversy after the same is paid by the" trust company "to the trustees in bankruptcy as the" trust company "proposes to do as soon as it is relieved of the restraining order in this case," and accordingly the suit was dismissed "without prejudice to any remedy which the plaintiff may have by proceedings in the" bankruptcy court.    Upon an appeal by the plaintiff, it was *held,* that

(1) The controversy concerned property to which the bankrupt had no title nor possession nor control at the date of bankruptcy;

(2) The plaintiff was seeking relief in a court having full jurisdiction of the parties and of the subject matter, and had no cause of action whatsoever against the trustees;

(3) Sections 60 b, 67 e, 70 e, of the bankruptcy act of 1898, as amended, had no bearing, no question of a preference or of a fraudulent conveyance being raised or suggested;

(4) A petition in the bankruptcy court with regard to the funds while in the possession of the trust company would not lie;

(5) The ruling in substance dismissing the suit because the bankruptcy court could administer the fund with greater flexibility than the trial court and therefore the plaintiff should be relegated to that court, amounted to a denial of relief;

(6) The mere willingness of the trust company to pay over the fund voluntarily to trustees upon dissolution of the injunction and their assurance that they would interpose no objections to the plaintiff's appearance in the bankruptcy proceedings, could not of itself confer jurisdiction upon the bankruptcy court;

(7) No interference with the bankruptcy court nor any infringement of comity appeared;

(8) Until the plaintiff, after having been given a reasonable opportunity therefor, had failed or declined to amend, the bill in the circumstances should not have been dismissed for alleged nonjoinder;

(9) There had been no delay sufficient to bar an amendment joining necessary parties;

(10) The plaintiff, in common with the owners of the other pledged securities sold by the trust company, had a right to follow the surplus proceeds of the sale into the fund held by the trust company, which asserted no claim nor title to it; and must rank with other claimants, among whom the fund, being insufficient to pay them in full, should be distributed;

(11) The other claimants must be made parties in order that it may be determined in what proportions distribution should be made.

BILL IN EQUITY, filed in the Superior Court on August 8, 1919, originally against John W. Cawley, a stockbroker, and Metropolitan Trust Company, and, after the appointment by the District Court of the United States for the District of Massachusetts of receivers of the property of the defendant Cawley in involuntary proceedings against him, and again after the appointment of trustees in bankruptcy, amended respectively to include the receivers and the trustees as defendants. The prayers of the bill were to reach the proceeds in the possession of Metropolitan Trust Company of the sale of certain bonds originally placed by the plaintiff in the hands of Cawley.

No defendant in any form of pleading set up as a defence nonjoinder of necessary parties.

In the Superior Court, the suit was heard by *Hammond*, J. Material facts and rulings and an order for a decree made by him are described in the opinion. In accordance with such order, a final decree dismissing the bill "without prejudice to any remedy which the plaintiff may have by proceedings in the District Court of the United States" was entered by order of *Wait*, J. The plaintiff appealed.

*F. Hoitt*, (*L. J. Dunn* with him,) for the plaintiff.

*A. N. Hunt & L. R. Eyges*, for the trustees in bankruptcy.

*H. Williams, Jr.*, (*C. E. Fay* with him,) for the Metropolitan Trust Company.

BRALEY, J. The material facts are as follows: On October 28, 1918, the plaintiff, owner of five bonds each of the par value of $1,000 issued by the Dominion of Canada, deposited them "as margin upon a trading account" with the defendant Cawley, a stockbroker doing a brokerage business "under the name of F. G. Roberts & Company." On July 22, 1919, Cawley made an assignment for the benefit of creditors, and, under involuntary proceedings begun on that day, he was adjudged a bankrupt on August 6, 1919, and the trustees of his estate, who also had acted as temporary receivers in bankruptcy until their appointment as trustees on September 27, 1919, are joined by amendment to the bill, which was filed on August 8, 1919. The bankrupt subsequently to October 28, 1918, rehypothecated the bonds in question with securities received from other customers on margin transactions, as security for money lent to him from time to time by

the defendant the Metropolitan Trust Company, and at the date of the assignment the total indebtedness amounted to $48,510.37. The company on July 22, 1919, began "to sell certain of the collateral which it held" exclusive of the plaintiff's bonds, which was the date the plaintiff first knew of Cawley's failure. He immediately retained counsel who on the same day gave notice in writing to the trust company of his individual interest as owner of the Canadian bonds, with a request "that before resorting to said bond you sell and apply upon the obligation to you the other collateral security therefor held by you." The treasurer informed counsel "that he thought the bank still held the Canadian bonds," and that it could by selling "the other collateral liquidate the loan and have about $6,000 surplus." Subsequently the treasurer told him that the company "had the bonds referred to and would hold them." The company thereafter continued the liquidation, and without the knowledge of the plaintiff or his counsel, on August 6, 1919, sold, and on August 7, delivered the plaintiff's bonds to the purchaser. The bonds in question brought $4,826.18, and, after the satisfaction of Cawley's indebtedness from the sale of securities placed by him with the trust company, there remained a balance of $9,304.03. The bankrupt at the date of adjudication and of the sale owed the plaintiff $3,400 independently of the value of the bonds. The fund thereafter remained in the exclusive possession and control of the trust company.

While the plaintiff is the only claimant who has ever made any demand on the company, it appeared "that various petitions in the nature of reclamation petitions or petitions to establish liens on the cash and securities in the hands of the trustees had been filed in the bankruptcy proceedings in the District Court of the United States. Some of these petitions were brought by persons whose securities had been pledged as collateral . . . and had been sold by the Metropolitan Trust Company," which has never appeared or sought to intervene in that court. During the entire period covered by the record the bankrupt, the trustees and the trust company were citizens of this Commonwealth.

The trial judge, who ordered the bill dismissed "without prejudice to any remedy which the plaintiff may have by proceedings in the District Court of the United States," gives these reasons

for the decree: "I was of opinion that the persons whose securities were pledged by the defendant Cawley to the Metropolitan Trust Company as collateral for the former's loan, and were sold by the Trust Company to liquidate the loan, were necessary parties to any litigation seeking to deal with the surplus funds in the hands of the Trust Company remaining after the loan had been liquidated, and therefore declined to proceed further with the hearing in this case in the absence of such parties. It appeared in evidence that various petitions in the nature of reclamation petitions or petitions to establish liens on the cash and securities in the hands of the trustees had been filed in the bankruptcy proceedings in the District Court of the United States. Some of these petitions were brought by persons whose securities had been pledged as collateral for the loan before mentioned and had been sold by the Metropolitan Trust Company. The bill in this case was filed on August 8, 1919. The only parties defendant originally named in the bill were Cawley and the Metropolitan Trust Company. The plaintiff has made no move since the filing of the bill to join any of these parties whose securities have been sold as aforesaid. Indeed, the plaintiff asserts the right to payment in full from the money in the hands of the Metropolitan Trust Company, relying upon the case of *Furber* v. *Dane*, 203 Mass. 108. Considering the fact that the plaintiff for nearly a year had neglected to take any step to join the other parties in interest, that there are other petitions pending in the bankruptcy court relating to other securities pledged for this same loan and sold by the Trust Company, and considering the fact that it is now the common practice to deal with such questions by petitions brought in the bankruptcy court where the machinery for citing in parties in interest and enforcing contribution among persons whose securities are sold under circumstances like those in this case, is well established, I am of the opinion that I ought not now to order the case to stand over so as to allow the bill to be amended by bringing in other parties, but that the bill should be dismissed and the plaintiff should be relegated to his right to bring a suit in the District Court in Bankruptcy to establish his equitable rights in the surplus fund in controversy after the same is paid by the Trust Company to the trustees in bankruptcy as the Trust Company proposes to do as soon as it is relieved of the restraining order in

this case. (*Harris* v. *Worcester Academy*, 110 Mass. 290.)" We also find the following rulings at the close of the evidence to the giving of which plaintiff's counsel were told that his rights were saved: "Well, I will hear you on this question, and on this question only: whether you are entitled — in the first place, whether this case ought not to be stopped before any decision is made, because of the absence of necessary parties, and, if so, what disposition should be made of the case; whether it should stand to allow you to bring in the parties by amendment, or whether it should be dismissed without prejudice to your right to assert your rights in the District Court."

"I should not dismiss this plaintiff from this court if there was any doubt about his right to prosecute his claim in the bankruptcy court. You must assure me, before I dismiss this bill, that the plaintiff can go down there without encountering a maze of bars and other difficulties. In the first place, you have not got the money. Nobody can bring any petition down there now, and never have been able to bring a petition down there with relation to this money, because you have not got it. This is the only place it can be brought, up to date."

"I think I will dispose of this case this way: unless you can let these petitioners into the bankruptcy court free and clear of any embarrassment on the ground of limitation and asserting some claim to share in this surplus, I will retain this case here."

"Now, if you really want to save your rights, I will do what I suggested yesterday; I will find that the parties are not properly before the court, and that I ought not to take jurisdiction. And further, I will deny the right to amend by calling in these parties, and save your rights on all of that, and report the case. The form of the decree, I am not quite satisfied in my own mind about, yet, but I should not dismiss this bill unless it was clear that you had the right to go into the bankruptcy court; but if you do have that right, I should dismiss it; that is to say, I should decline to permit an amendment to the bill by bringing in these parties, and give you your rights in the district court. My only doubt is as to whether you are foreclosed by any of those proceedings down there."

The controversy, as we have said, concerns property to which the bankrupt had no title, or possession, or control at the date

of bankruptcy. The plaintiff, as a claimant to the fund, seeks relief in a court having full jurisdiction of the parties and of the subject matter, and has no cause of action whatsoever against the trustees. By § 23 b of the bankruptcy act of 1898, c. 541, 30 U. S. Sts. at Large, 552, U. S. Comp. Sts. (1901) 3431, "Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section sixty, subdivision b, and section sixty-seven, subdivision e." The amendatory acts of U. S. St. 1903, c. 487, 32 U. S. Sts. at Large, 798, 799, and of U. S. St. 1910, c. 412, § 7, 36 U. S. Sts. at Large, 840, so amending § 23 b as to give the district court concurrent jurisdiction with the State court where the trustee seeks to recover preferences or property conveyed in fraud of creditors under § 60 b, § 67 e, and § 70 e, of the act of 1898, have no bearing on the case at bar where no question of a preference or fraudulent conveyance by the bankrupt is raised or even suggested. The district courts have jurisdiction of suits for the recovery of property under the sections referred to without the consent of the "proposed defendant," but a plenary suit in all other cases cannot be instituted in that court without consent of the "proposed defendant." *Louisville Trust Co.* v. *Comingor,* 184 U. S. 18. *First National Bank of Chicago* v. *Chicago Title & Trust Co.* 198 U. S. 280. *Frank* v. *Vollkommer,* 205 U. S. 521. *Harris* v. *First National Bank of Mt. Pleasant,* 216 U. S. 382. *Weidhorn* v. *Levy,* 253 U. S. 268.

The judge's ruling when referring to the bankruptcy court, "Nobody can bring any petition down there now, and never have been able to bring a petition down there with relation to this money, . . . " accurately stated the law applicable to the present record. *Bardes* v. *Hawarden Bank,* 178 U. S. 524. *Bush* v. *Elliott,* 202 U. S. 477. *Frank* v. *Vollkommer,* 205 U. S. 521. *Eyster* v. *Goff,* 91 U. S. 521. *Davis* v. *Friedlander,* 104 U. S. 570. *Skilton* v. *Codington,* 185 N. Y. 80.

The dismissal of the bill because the bankruptcy court could administer the fund with greater flexibility than the trial court, but under what conditions is not fully shown, and therefore the

plaintiff should be relegated to that court, amounted to a denial of relief. It is immaterial whether Cawley was authorized to pledge the plaintiff's bonds, or whether he acted in the absence of such authority; the trust company was an innocent purchaser for value. The company sold the plaintiff's bonds after notice of his title as owner. Its mere willingness to pay over the fund voluntarily to the trustees upon dissolution of the injunction and their assurance that they would interpose no objections to the plaintiff's appearance in the bankruptcy proceedings, could not of itself confer jurisdiction, and no interference with the bankruptcy court nor any infringement of comity appears. It is not shown that any of the alleged claimants demanded participation, and the defence of nonjoinder is not pleaded in the answer of the trust company, nor has it ever resorted to a bill of interpleader — the appropriate remedy, even after the plaintiff's bill was filed, for the protection of its interests. *Fairbanks* v. *Belknap,* 135 Mass. 179. *National Security Bank* v. *Batt,* 215 Mass. 489. *Connecticut Mutual Life Ins. Co.* v. *Cook,* 219 Mass. 222. While the trustees are insistent that the fund must be marshalled in the bankruptcy court, they fail to point out how a claim or petition for reclamation can be maintained in that court where there is no fund over which it has jurisdiction. The bill should not have been dismissed on this ground.

But after ruling in substance that no decree could be entered because of nonjoinder, and without giving the plaintiff leave to amend within a time to be designated in a proper interlocutory decree, the court declined to entertain the bill. The evidence however having been taken by a commissioner, and no question of the credibility of witnesses being in issue, the entire case is before us on the appeal. We are of opinion that, until the plaintiff, after having been given a reasonable opportunity therefor, had failed or declined to amend, the bill under the circumstances should not have been dismissed for alleged nonjoinder. If the plaintiff, who plainly had made out a case, could not obtain relief in the trial court, he was remediless under any procedure to which as matter of right he could resort in the bankruptcy court. It was said by Mr. Justice Colt, in *Schwoerer* v. *Boylston Market Association,* 99 Mass. 285, 295, " An objection to the nonjoinder, if deemed necessary by the defendant to his own pro-

tection, and when apparent on the face of the bill, is taken by demurrer, or otherwise by plea or answer setting forth the facts by which other persons named therein are made necessary or proper parties. If the defendant does not for any reason think fit to take the objection before, the defect may be availed of, to a limited extent, at the final hearing upon the pleadings and proof. But, when thus delayed, the objection receives far less favor from the court, and its allowance is said to depend to some extent upon sound discretion. If there be an omission of an indispensable party, so that a complete decree cannot be made without him, the court will itself, *ex mero motu*, take notice of the fact, and direct the cause to stand over, in order that such new party may be added; or dismiss the bill, when the plaintiff is chargeable with laches. In such cases, it must appear that the decree will have the effect of depriving the party omitted of his legal rights. Where the defect is formal and technical merely, and is only objected to at the hearing, and especially if other parties are needed only for the defendant's protection, the decree will not be delayed if the nonjoinder produces no other prejudice to the rights of parties before the court." *Case* v. *Minot,* 158 Mass. 577, 588. The necessity of the joinder of other parties did not become positively manifest until the hearing. We perceive no delay sufficient to bar an amendment. The facts in *Harris* v. *Worcester Academy,* 110 Mass. 290, clearly distinguish that case from the present case. The plaintiff however contends that no amendment is necessary because he is entitled to have his claim satisfied in full. The amount received from the sale of all the securities included the sum for which the plaintiff's bonds were sold. The property "may be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner." *Cook* v. *Tullis,* 18 Wall. 332. The right ceases only when ascertainment fails. Even if the trust company before suit had turned the proceeds over to the trustees, neither the character of the fund nor the rights of the plaintiff therein would have been changed. *Little* v. *Chadwick,* 151 Mass. 109. The plaintiff in common with other owners of the converted securities can trace the surplus proceeds into the fund now specifically held to which it neither claims nor has title. *Lowe* v. *Jones,* 192 Mass.

94, 101. *Furber* v. *Dane*, 203 Mass. 108, 120. *Richardson* v. *Shaw*, 209 U. S. 365.

It follows that the plaintiff must rank with other claimants, among whom the fund, being insufficient to pay them in full, should be distributed, but in what proportions can only be determined when all those interested have been made parties. *McBride* v. *Potter-Lowell Co.* 169 Mass. 7. *Hewitt* v. *Hayes*, 205 Mass. 356, 365.

The decree is reversed, and the case is to stand for further proceedings in the trial court.

*Ordered accordingly.*