LAVIEN v. NORMAN.
LEWIS v. SAME.

NORMAN v. BANCROFT TRUST CO.
Nos. 2589–2591.

Circuit Court of Appeals, First Circuit.
Jan. 20, 1932.

Saul A. Seder (of Seder & Seder) of Worcester, Mass., for Lavien and Lewis.

Edwin G. Norman and Arthur S. Houghton, both of Worcester, Mass., for Norman, trustee.

John J. Moynihan (of Mahoney & Moynihan), of Worcester, Mass., for Bancroft Trust Co.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

These three cases, submitted in one record and argued together, are here on appeal from decrees of the District Court of Massachusetts affirming orders of a referee in bankruptcy on petitions by claimants in each case to reclaim portions of funds and shares of stock in the hands of a trustee in bankruptcy.

Each petition involves the purchase of stocks by, or deposits of securities with, a stockbroker who has been adjudged a bankrupt, and may be disposed of in one opinion.

It is impossible to harmonize the decisions as to the relations between a stockbroker and his customers. In Massachusetts, when a customer purchases stocks on a margin, as it is termed, the customer paying whatever may be required by the broker as a cash payment, or the deposit of securities, and the broker provides the balance of the purchase price, it has been held that, while in purchasing the stock, the broker acts as the agent of the customer, Rice v. Winslow, 180 Mass. 500, 502, 62 N. E. 1057, the title remains in the broker, until the stock is fully paid for; and at least from the time of purchase, as between the broker and the customer, the relation is one of debtor and creditor. Wood v. Hayes, 15 Gray (Mass.) 375; Brown v. Corey, 191 Mass. 189, 77 N. E. 838; Brown v. Rushton, 223 Mass. 80, 83, 111 N. E. 884; In re Swift (C. C. A.) 112 F. 315; Richardson v. Shaw, 209 U. S. 365, 381–384, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981.

It has also been held in several Massachusetts decisions that there is no difference between securities purchased by a broker for a customer on a margin, to which the customer does not acquire title until paid for, and securities of a customer deposited with a broker to make good a margin account. Hall v. Paine, 224 Mass. 62, 73, 112 N. E. 153, L. R. A. 1917C, 737; Crehan v. Megargel, 235 Mass. 279, 282, 126 N. E. 477. It is difficult, however, to understand how the court arrived at this conclusion, unless it be on the ground suggested in Furber v. Dane, 203 Mass. 108, 116, 89 N. E. 227, that it is a custom of brokers in Massachusetts; but whether stocks purchased on a margin and stocks deposited with a broker on a margin account are to be treated the same in all respects is not clear, at least, on principle. There may be some ground for treating the title to stocks purchased by a broker for a customer for which the broker supplies the greater part of the purchase price, to be in the broker until paid for, though the relation is held to be that of pledgee and pledgor in other jurisdictions; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Thomas v. Taggart, 209 U. S. 385, 28 S. Ct. 519, 52 L. Ed. 845; but why it should be held that the title to stock owned by a customer and merely deposited with the broker to make good a margin account forthwith passes to the broker is not made clear in any of the reported decisions that have been called to our attention, unless it be by custom, as suggested in the case of Furber v. Dane, supra.

From an examination of the decisions in Massachusetts by which the relations between these claimants and the bankrupt are governed, one may deduce the following rules, which, at least, find support in one or more decisions of that court: A broker, according to the general custom, unless it be stipulated to the contrary, to protect himself, has the right to sell securities deposited with him, as well as securities purchased by him for a customer, on a margin account; as to margin accounts, the relation of debtor and creditor exists as between the broker and customer; as to any securities deposited by a customer as well as those purchased by the broker on a margin account, a broker may pledge them with another broker with whom he deals on a margin in executing a customer's orders, or with a bank to secure a loan; and, so long as they can be identified, they may be reclaimed by the customer, or one proving title thereto, when the claim of the pledge is satisfied. Doucette v. Baldwin, 194 Mass. 131, 80 N. E. 444; Furber v. Dane, supra; Leonard v. Hunt (C. C. A.) 36 F.(2d) 13.

It has also been held as to securities carried on a margin account, and rightfully pledged, whether to a bank or a second broker, that, if sold, any surplus into which the proceeds of such securities can be traced may be reclaimed by the customer, sharing pro rata (in case the surplus is not sufficient to reimburse all such claimants) with any other claimant showing equal title to any of the securities so pledged and sold. Sutcliffe v. Cawley, 240 Mass. 231, 132 N. E. 406; Furber v. Dane, 203 Mass. 108, 89 N. E. 227; Doucette v. Baldwin, 194 Mass. 131, 80 N. E. 444; In re Gay & Sturgis (D. C.) 251 F. 420; In re Codman, Fletcher & Co. (C. C. A.) 287 F. 806.

A fortiori must this be true in case of a cash customer whose securities have been wrongfully pledged. It also follows that shares of stocks which have been purchased through a Massachusetts broker and paid for by the purchaser and wrongfully pledged with another broker, but which have come into the possession of the trustee in bankruptcy of the Massachusetts broker, may be reclaimed from the trustee by the customer.

### Case of Leo H. Lavien.

In the case of Leo H. Lavien, the facts agreed upon are as follows: Some time in October, 1929, Lavien gave several orders to Riley, Fitzgerald & Co., stockbrokers,

having a place of business in Worcester, Mass., to purchase the following shares of stock: 20 shares of Atlas Tack; 10¼ shares of Texas & Pacific Coal & Oil; 10 shares of Ajax; 20 shares of Insurance Shares of Delaware; 10 shares of Continental Can; 10 shares of Fox Film A.

Riley, Fitzgerald & Co. were not members of the New York Stock Exchange. It was their custom to execute all orders of their customers for stocks listed on the New York Stock Exchange through Clark, Childs & Co. of New York, with whom they carried a margin account, on which they purchased stock for their customers who traded with them on a margin.

Lavien, however, purchased on a cash basis, and as soon as he was notified that the stock ordered by him had been purchased, and a bill was rendered him by Riley, Fitzgerald & Co., he gave them his check in payment, with the understanding that a certificate for the shares of stock in each instance was to be delivered to him.

Riley, Fitzgerald & Co., however, gave no directions to Clark, Childs & Co. to transfer the shares of stock to the name of Lavien; but with one exception left them, presumably in the form of a certificate indorsed by the previous owner in blank, with Clark, Childs & Co. to keep their own margin account good. The twenty shares of Atlas Tack stock Riley, Fitzgerald & Co. had transferred to their own name; but on receipt of the certificate, without authority from Lavien, pledged it, together with securities of other customers, with the Worcester County National Bank to secure a loan. On October 30, 1929, owing to the sharp break in the market on the previous day, Clark, Childs & Co. made a demand on Riley, Fitzgerald & Co. for additional funds or securities to make good their margin account. Riley, Fitzgerald & Co. failed to meet the demand, and Clark, Childs & Co. sold sufficient of the securities deposited with them by Riley, Fitzgerald & Co., including all the shares of stock purchased for Lavien, except the twenty shares of Atlas Tack, to liquidate Riley, Fitzgerald & Co.'s account.

The Worcester County National Bank also sold all the securities pledged with it, including the twenty shares of Atlas Tack.

On October 31st, an involuntary petition in bankruptcy was filed against Riley, Fitzgerald & Co., and the appellee, Edwin G. Norman, was appointed trustee in bankruptcy.

After the sale of securities sufficient to liquidate its account, Clark, Childs & Co. had in their possession certain unsold securities of the customers of Riley, Fitzgerald & Co., which had been purchased or deposited on their margin account, and cash to the amount of $27,000. The total value of the securities held by Clark, Childs & Co. on October 28, 1929, approximated $1,250,000. The Worcester County National Bank, after the sale of the securities held by it, also had left in its possession a sum in excess of the amount received for the twenty shares of Atlas Tack stock.

Upon the appointment of the trustee in bankruptcy, Clark, Childs & Co. delivered to him the balance of the securities it held on the margin account of Riley, Fitzgerald & Co. and the cash left after liquidating the account, and the Worcester County National Bank followed the same course as to the surplus left in its hands.

Lavien filed a petition with the referee in bankruptcy asking that the sums for which the stock purchased for him were sold be paid to him, claiming that the proceeds of the sale were a part of the funds turned over to the trustee by Clark, Childs & Co. and by the bank.

■■ The referee held that the petitioner was entitled to share pro rata, at least, with any other owners of securities unlawfully pledged with the bank, if there was not a sufficient balance turned over to the trustee to pay such claimants in full; but as to the securities of the petitioner sold by Clark, Childs & Co. in liquidating their account, he held that it was not possible to trace the proceeds from the sale of the petitioner's securities into the surplus in cash turned over to the trustee.

His reasoning appears to be that since there were large sums paid in cash by Riley, Fitzgerald & Co. to Clark, Childs & Co. within the seven months prior to their bankruptcy, $105,000 of which had been paid in since the last purchase of the Lavien stocks, and the sums involved with Clark, Childs & Co. were so large that the proceeds of the sale of the Lavien stock, involving only $1,890.99, could not be traced into the surplus turned over by them to the trustee in bankruptcy.

We are unable to follow the reasoning of the referee, and fail to see what the size of the margin account, or that cash was paid in to Clark, Childs & Co. by Riley, Fitzgerald & Co., prior to or after the Lavien stock was purchased, had to do with tracing the

proceeds. The fact remains that in the **Riley, Fitzgerald & Co.**'s margin account on October 29, 1929, were the shares of stock of Lavien for which he had paid Riley, Fitzgerald & Co. and which they had wrongfully pledged with Clark, Childs & Co. The stocks purchased for Lavien, together with other securities, some rightfully pledged when purchased through Riley, Fitzgerald & Co., or deposited with them on a margin account, and others, perhaps like Lavien's stocks, wrongfully pledged, constituted the margin of Riley, Fitzgerald & Co. on October 29, 1929.

As between the bankrupt or his trustee, and Lavien, in order to do equity, it must be held that the securities rightfully pledged were first sold to liquidate the Clark, Childs & Co. account, and any surplus left was the result of the sale of such securities as were wrongfully pledged; Sexton v. American Trust Co. (C. C. A.) 45 F.(2d) 372; Wright v. Blank (C. C. A.) 20 F.(2d) 591; and Lavien, since his securities were wrongfully pledged, is entitled at least to share pro rata with any other customers of Riley, Fitzgerald & Co. who can show their securities were also wrongfully pledged, in case the surplus is not sufficient to satisfy all such claimants.

The referee so decided as to the Worcester County National Bank and the Atlas Tack stock. Other securities, together with the Atlas Tack stock, were sold to liquidate the bank's loan. The proceeds of the Atlas Tack stock could no more be positively traced into the surplus left in the hands of the bank than the proceeds of the sale of the other stock purchased and paid for by Lavien can be traced into the surplus cash fund left in the hands of Clark, Childs & Co. after the liquidation of the Riley, Fitzgerald & Co. account with them. In other words, it can be as definitely traced in the one case as in the other.

In any event, the parties have so agreed in their agreed statement of facts contained in the printed record, in which the following appears:

"Clark, Childs & Co. sold all of the shares of stock which it had in the account of Riley, Fitzgerald & Co., and, after satisfying its own claim, there remained in its possession a surplus of some $27,000 *derived from the sale of these shares of stock* and other stock held by it as collateral for the claim which it had against Riley, Fitzgerald & Co. The sale by Clark, Childs & Co. included the shares purchased by Riley, Fitzgerald & Co. for Leo H. Lavien as follows: 10¼ shares Texas & Pacific Coal & Oil; 10 shares Ajax; 20 shares Insurance Shares of Delaware; 10 shares Continental Can; 10 shares Fox Film A.

*"The surplus thus received by Clark, Childs & Co. from the sale of this stock was turned over to the trustee in bankruptcy,* Edwin G. Norman, soon after his appointment, who now has these moneys in his possession as trustee."* (Italics supplied.) See Sutcliffe v. Cawley, supra.

Lavien, as to the stock paid for by him and wrongfully pledged with Clark, Childs & Co., in the language of the referee with respect to the Atlas Tack stock, "is entitled on the theory of a wrongful conversion and tracing of the proceeds to share pro rata with other customers whose stocks have been wrongfully hypothecated," and who are entitled to an equal opportunity to present their claims to the referee in bankruptcy.

### In re Arthur S. Lewis.

██ We think the referee's finding as to the claim of Lewis was properly affirmed by the court below. Lewis was a margin trader, and the Massachusetts doctrine also controls on the facts in his case. Lewis had also deposited stock of his own to support the account, and Riley, Fitzgerald & Co. had purchased stocks for him on a margin account. Riley, Fitzgerald & Co. therefore, under the decisions in Massachusetts, had rightfully pledged all the stocks, both those deposited and those purchased, in the Lewis account to secure their account with Clark, Childs & Co. It does not appear that any of the securities unsold by Clark, Childs & Co. in liquidating their account can be identified by Lewis as any of those deposited by him or purchased on his account.

When his stocks were sold, Riley, Fitzgerald & Co. became the creditor or debtor of Lewis, as the case may be; in this case his debtor, as it appears that there was a balance in his favor in his account with them. If he had seen fit to demand his stocks at any time before bankruptcy, the broker was bound to turn them over to him; but he had not done so. He was content to remain the creditor of his brokers, and therefore has no claim on the proceeds of the stocks sold and turned over to the trustee up to the time of bankruptcy by Clark, Childs & Co., whether purchased for or deposited by him, as his stocks were all rightfully pledged and sold. He can only share in the proceeds as a creditor.

██ The twenty shares of stock of Fox Theatres Corporation illustrates the rights of Lewis under his status as a margin trader,

who had a balance in his favor. This stock had been transferred to his name, as he had a right to have it under the status of his account, was indorsed by him in blank, but was found in the possession of the bankrupt, as well as thirty shares of H. R. Mallinson & Co., Inc., stock which he had deposited with the brokers on his account, but which remained in their hands. These stocks clearly belonged to Lewis under the Massachusetts decisions, and were ordered restored to him by the referee. Leonard v. Hunt, supra.

It also appears that Riley, Fitzgerald & Co. had purchased for Lewis eighty more shares of the H. R. Mallinson & Co., Inc., stock, but that no certificates totalling exactly eighty shares of this stock were found in their possession, or pledged by him, but they did have in their possession on October 31st, chiefly in 100-share lots, certificates for shares of this stock totalling 2,765 shares, for which only one claimant appears, and for only fifty shares.

The District Court affirmed the finding of the referee that no part of this larger amount of stock could be identified as the eighty shares to which Lewis was entitled. In this we think the court erred. Where a broker sells stock purchased by him for a customer without the knowledge or authority of the customer, he is bound to obtain at once sufficient stock of the same kind to satisfy the order of his customer; and if he acquires more stock of the same kind, but not in fulfillment of any order of another customer, so much of it as may be necessary to make good the order of the first customer, or Lewis in this case, is presumed to have been bought for the purpose of restitution, and may be considered as identified as the stock originally purchased to fill his order. Certificates are only evidence of ownership of stock. One share is like another, as in the case of grain deposited in a warehouse, a customer is not required to identify each kernel of grain deposited by him, or each particular bushel. The entire contents of the warehouse may have been sold and replaced many times over; but if it contained a larger amount than that deposited by the farmer, he is entitled to the amount he deposited. The court has applied the same rule as to shares of stock in the hands of a broker. Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047; Sexton v. American Trust Co. (C. C. A.) 45 F. (2d) 372, 378; Duel v. Hollins, 241 U. S. 523, 527, 36 S. Ct. 615, 60 L. Ed. 1143. The relations here are between Lewis and his broker, and he no longer owed the broker on his account. In addition to the thirty shares of the H. R. Mallinson & Co., Inc., stock that was found in the hands of the broker on the date of the filing of the petition in bankruptcy, under the rule laid down in Leonard v. Hunt, supra, and in the cases last cited, Lewis, with a balance in the hands of the broker in his favor, was entitled to receive not only the Fox Theatres Corporation stock, but the full 110 shares of the H. R. Mallinson & Co., Inc., stock.

### In re the Bancroft Trust Company v. Edwin G. Norman.

The Bancroft Trust Company ordered through Riley, Fitzgerald & Co. on October 1, 1929, 100 shares of Public Service Company of New Jersey. Riley, Fitzgerald & Co. purchased this stock through Clark, Childs & Co., who, on the same day, notified Riley, Fitzgerald & Co. of the purchase, who, in turn, on October 17th, notified the trust company of the execution of their order. The trust company on October 18th credited the account of Riley, Fitzgerald & Co., who was a customer of the trust company, with the amount of the purchase price plus the broker's commission, and, in accordance with its custom, requested Riley, Fitzgerald & Co. to have the certificates made out in the name of Riley, Fitzgerald & Co., and indorsed by them in blank for delivery to the trust company.

On October 19th, the trust company ordered through Riley, Fitzgerald & Co. 100 shares more of this stock, which was secured by Clark, Childs & Co., on October 21st. Clark, Childs & Co. notified Riley, Fitzgerald & Co. of the purchase on October 23d, who in turn notified the trust company, which on October 26th, also credited to the bank account of Riley, Fitzgerald & Co. the amount of the purchase price plus commissions, and again requested that the certificate for this purchase be taken in the name of the broker and indorsed in blank for delivery to the trust company.

The transfer of the certificate was delayed, and before it was completed Clark, Childs & Co. learned of the financial embarrassment of Riley, Fitzgerald & Co. and finally delivered both certificates over to the trustee in bankruptcy. No other transaction by Riley, Fitzgerald & Co. in October, 1929, involved shares of this stock.

The trust company filed a petition with the referee in bankruptcy for the reclamation of this stock, and the referee ordered it delivered to the trust company, which order was

affirmed by the District Court, from which order of the District Court the trustee appealed.

The trustee contends that there was no payment for this stock by the bank, but a mere transfer of credit. The trustee also contends, there having been no transfer of the certificate of either 100 share lots of this stock to the trust company, that under the Massachusetts Uniform Stock Transfer Act, G. L. c. 155, §§ 24-46, the title to the stock never passed to the trust company, and therefore remains in this case in the hands of the trustee in bankruptcy; but unless it appears, as it does not in this case, that such act is operative in the state where the Public Service Company of New Jersey was organized, it has been repeatedly held by the Massachusetts court that the Uniform Stock Transfer Act of Massachusetts does not apply to shares of stock of a foreign corporation, and an assignment of the certificate of stock was not necessary in order to transfer title. Boston Safe Deposit & Trust Co. v. Adams, 224 Mass. 442, 113 N. E. 277, L. R. A. 1916F, 488; Barstow v. City Trust Co., 216 Mass. 330, 103 N. E. 911; Casto v. Wrenn, 255 Mass. 72, 75, 150 N. E. 898.

The trust company was not a margin customer. It is not a parallel case with Wood v. Hayes, 15 Gray (Mass.) 375, where a note was given for a balance due a broker, and the stock still held by the broker as security for the payment of the note, which was never paid. Here the trust company credited to the bankrupt's bank account the amount of the purchase price in each case. While there is no direct testimony that the funds so credited were drawn out by the brokers, the referee may have been warranted in finding that a broker, who, during the few days prior to October 29th, was being called on to furnish further margin for his account with the New York broker, would not leave over $22,000 on his bank account; and even if the referee was not warranted in so concluding from the facts contained in the agreed statement before him in these three cases, viz., that Riley, Fitzgerald & Co. since October 23d paid to Clark, Childs & Co. $105,000 in cash, such a conclusion was entirely justified from these facts, and the fact that no claim is made by the trustee that the trust company has reappropriated any part of the sums thus credited, nor does it appear that the trust company has made any claim against the bankrupt estate for any part of the sums so credited in payment for this stock. If it had not been drawn out, it would be a part of the assets of the bankrupt, which could readily have been shown. The finding of the referee approved by the District Court that this stock was paid for by the trust company, and that as against the bankrupt or his trustee it was entitled to have these shares transferred to its name, was not clearly wrong.

In No. 2589, the order of the District Court is reversed so far as it relates to the appellant's rights in the funds received from Clark, Childs & Co., with costs to the appellant, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

In No. 2590, the order of the District Court is reversed as to the eighty shares of the H. R. Mallinson & Co. Inc., stock with costs to the appellant, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

In No. 2591, the order of the District Court is affirmed, with costs to the appellee.