ADRIAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 18—October 12, 1926.*

*Embezzlement: Appropriation under claim of right: Question of fact: Conviction for greater than correct amount: Fraudulent intent: Evidence: Sufficiency.*

1. Whether defendant, an agent accused of embezzlement, retained the amount appropriated believing in good faith that he was entitled to do so under his arrangement with the principal, raised a question of fact. p. 196.
2. Ordinarily, payment by a check does not extinguish the original liability until the check is paid; but where the party receiving the check retains it for a considerable, time, and then brings suit upon the original liability, giving credit for the check, he is *held* to have intended to rely on the check, and the original liability is *pro tanto* extinguished. p. 195.
3. Though technically the convicted defendant was not guilty of embezzling more than $121.94, the fact that the trial court found him guilty of embezzling $531.48 does not justify a reversal, the penalty being the same for either amount. p. 197.
4. Where an agent, after depositing in his own bank account funds belonging to his principal, subsequently converted the entire fund and left the state, his fraudulent intent could be inferred, or at least a finding of fraudulent conversion within the meaning of the statute will be sustained. p. 197.

ERROR to review a judgment of the municipal court of Milwaukee county: GEORGE A. SHAUGHNESSY, Judge. *Affirmed.*

The plaintiff in error, hereinafter called the defendant, was charged with having on August 12, 1922, embezzled the sum of $531.48 belonging to the complainant Kuczynski Electric Company. It appears that some time prior to June, 1922, the defendant was employed by the electric company as a collector, and among other accounts given him for collection was one against Dan Schneider amounting to $812.92. Some time prior to June 20, 1922, the defendant collected $400 of this amount, he remitted $200 to the com-

pany, and on or about June 20, 1922, the remainder of the amount was paid by Schneider, and the defendant sent to the company a check for $409.69, drawn on the Merchants and Manufacturers Bank. Accompanying the check was a slip upon which was written a statement to the effect that the check was given in full payment of the amounts owing by the defendant to the company. The company retained the check. It appears that the company claimed the defendant was entitled to a commission of ten per cent., while the defendant claimed he was entitled to a commission of twenty-five per cent. In the month of August, 1922, the company brought suit against the defendant and alleged:

"That on or about March 21, 1922, said plaintiff [the company] employed the defendant [defendant here] to collect of one Dan Schneider the sum of $812.92 then due and owing from said Dan Schneider to said plaintiff, at and for the agreed commission of ten per cent. upon the amount of said indebtedness collected by said defendant; that on or about June 9, 1922, said Dan Schneider paid the sum of $812.92 to said defendant in satisfaction of plaintiff's claim. That plaintiff heretofore demanded of defendant the amount collected by defendant as aforesaid, less his agreed charges of ten per cent. on said collection, but defendant has refused and neglected to pay any part thereof except the sum of $609.69, leaving a balance due and owing to said plaintiff, after deducting the agreed collection fee of ten per cent., of $121.94."

It appears that the company retained the $409.69 check and did not present the same for payment. It appears from the testimony of the bookkeeper of the bank that defendant's account was opened April 29, 1922, and was closed October 2, 1922; that on the 20th day of June, 1922, there was in the bank to the credit of the defendant $457.58; on June 22 and 23, 1922, $432.58. It also appears without dispute that from the 1st of July to the 14th of September, 1922, there were at no time funds in the bank sufficient to pay the check of $409.69. On the 14th day of September, 1922,

the defendant deposited in the bank $1,238 and at the same time stopped payment on the check of $409.69, and on October 2, 1922, the defendant withdrew all his funds from the bank and left the city of Milwaukee.   The defendant went to the city of St. Louis and subsequently to the state of Montana, and at the time he was returned to the state of Wisconsin was serving a sentence for a felony in the state of Montana.

The defendant in writing duly waived trial by jury, the cause was tried by the court, upon the trial the defendant was found guilty and sentenced to three years in state prison, and from the judgment and sentence the defendant brings his writ of error.

For the plaintiff in error there was a brief by *William J. Kershaw,* attorney, and *Willard A. Bowman,* of counsel, both of Milwaukee, and oral argument by *Mr. Bowman.*

For the defendant in error there was a brief by the *Attorney General, Eugene Wengert,* district attorney of Milwaukee county, and *George A. Burns,* special assistant district attorney, and oral argument by *Mr. Burns.*

ROSENBERRY, J.   Two principal questions are argued: (1st) that there was no fraudulent appropriation of the money of the electric company by the defendant; (2d) that the defendant retained the funds under a claim of right and is therefore not guilty of embezzlement.

It is argued that by the retention of the check and the commencement of the suit against the defendant acknowledging payment of $609.69, of which amount $409.69 was represented by the check given June 20th, the relation of debtor and creditor as to that amount at least was established.   It is true that ordinarily a payment by check does not extinguish the original liability until the check itself is paid; but where as in this case the party receiving the check retains the same, and after having it in his pos-

session for a considerable time brings suit upon the original liability, acknowledges payment of an amount which includes the amount of the check, we cannot escape the conclusion that the party thereby intended to rely thereafter upon his rights under the check and that the original liability was *pro tanto* extinguished. It does not appear what reasons moved the electric company to retain the check. That it was done deliberately and intentionally there can be no doubt. There remained due, according to the claim of the electric company, $121.94. It is urged that the defendant retained this amount under a claim of right and that therefore there can be no fraudulent conversion such as is necessary to sustain an information for embezzlement. Whether or not the defendant retained the sum of $121.94 believing in good faith that he was entitled to do so under his arrangement with the electric company, raises a question of fact. The defendant set up several claims. At one time he made the claim that the electric company was indebted to him on other accounts and that he had a right to retain $200 out of the first $400 on that account. When he remitted the sum of $409.69 he attached a slip to the effect that if the check was accepted it was a full settlement. It was quite probable that this was done in the hope that the electric company, rather than stand on its rights, would accept the check and waive the payment of $121.94. He never offered to make any adjustment of the account; when the check of $409.69 was not presented he withdrew that amount and the fund alleged to be in dispute from the bank and departed from the state.

A review of the defendant's testimony leaves the impression that he was not a fair and frank witness; that on the contrary he was evasive, untruthful, and his testimony is contradictory and unsatisfactory. Under these circumstances the court, having found him guilty of embezzling the whole amount of $531.48, must have been convinced

that he did not retain the $121.94 under a claim of right made in good faith. While it is true that the defendant is not technically guilty of having embezzled more than $121.94 on account of the action of the electric company, the prescribed penalty would be the same under the law in either event, and a finding that he was guilty of embezzling $121.94 would support the judgment. The difference in moral guilt involved is so slight, the defendant having, by the means adopted, secured the whole amount, that it is not deemed sufficient to affect the opinion of the trial court as to the punishment which should be inflicted.

We are very earnestly urged to consider the nature of the transaction by which the defendant deposited in his bank moneys belonging to the electric company and to hold that it does not amount to an embezzlement and that the agent was thereby impliedly authorized to substitute his own obligation for the money collected. The mere deposit by an agent in the ordinary course of business of funds belonging to a principal in his own bank account and so intermingling it with his own funds undoubtedly amounts to a technical conversion (see *People v. Schroeder,* 43 Cal. App. 623, 185 Pac. 507), but it may lack the element of fraud necessary to constitute a fraudulent conversion. However, when as here the fiduciary subsequently converts the whole fund to his own use and flees from the state with the evident purpose of depriving the beneficiary of his rights therein, the element of fraudulent intent may be inferred from his acts. At least there is sufficient to sustain a finding of fraudulent conversion within the meaning of the statute. *Comm. v. Hutchins,* 232 Mass. 285, 122 N. E. 275.

*By the Court.*—The judgment of the municipal court is affirmed.